UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-23494-CIV-HUCK/O'SULLIVAN

OLEM SHOE CORP.,

    Plaintiff,

v.

WASHINGTON SHOE CO.,

    Defendant.

_____/

## ORDER ON MOTION FOR ISSUANCE OF REQUEST TO REGISTER OF COPYRIGHTS

This matter is before the Court on Plaintiff Olem Shoe Corp.'s Motion for the Issuance of Request to Register of Copyrights Pursuant to 17 U.S.C. § 411(b)(2) (D.E. #76). Defendant Washington Shoe has accused Olem Shoe of infringing two of its copyrights. Olem Shoe alleges that Washington Shoe's copyrights are invalid because Washington Shoe submitted inaccurate information to the Copyright Office when registering the copyrights. In the present motion, Olem Shoe asks the Court to submit a series of questions to the Copyright Office for an advisory opinion as to whether the Register of Copyrights would have refused registration if it had known of the allegedly inaccurate information. The parties have submitted numerous briefs regarding Olem Shoe's questions, and the Court held two hearings on the motion on June 9, 2010 and on August 11, 2010. For the reasons stated during the hearings and below, the Court grants in part and denies in part Olem Shoe's motion.

**I.**     **Background**

Olem Shoe and Washington Shoe both sell women's boots. This case is about two of Washington Shoe's boot designs called "Ditsy Dots" and "Zebra Supreme." As the names suggest, Ditsy Dots boots are polka-dotted, and Zebra Supreme boots have a patterned design like a zebra's black and white striped skin. Washington Shoe sent Olem Shoe cease-and-desist letters accusing Olem Shoe of selling "knock-off" versions of the boots and infringing Washington Shoe's intellectual property rights. Olem Shoe brought this suit for a declaratory judgment that its boots do not infringe Washington Shoe's intellectual property rights. Washington Shoe answered and counterclaimed for, among other things, infringement of its

federally registered copyrights covering the two-dimensional patterned designs on the faces of the Ditsy Dots boots (Registration No. VAu000756950, registered August 9, 2007) and the Zebra Supreme boots (Registration No. VAu001007893, registered January 8, 2010).

Washington Shoe moved for summary judgment on its copyright infringement counterclaims. In its opposition to the motion for summary judgment, Olem Shoe asserted, among other things, that the copyright registrations are invalid under 17 U.S.C. § 411 because Washington Shoe submitted inaccurate information to the Copyright Office with the registrations.

Subject to certain exceptions, 17 U.S.C. § 411 requires copyright holders to register their works in accordance with the requirements of the Copyright Act before bringing a claim for copyright infringement. *See id.* § 411(a).[1] Thus, a party ordinarily must have a valid copyright registration in order to bring a claim for copyright infringement. *See Reed Elsevier, Inc. v. Muchnick*, 130 S. Ct. 1237, 1242 (2010).[2] Parties accused of copyright infringement often argue that inaccurate information submitted in an application for registration invalidates the copyright registration. In 2008, as part of the Prioritizing Resources and Organization for Intellectual Property Act of 2008 (PRO IP Act), however, Congress amended § 411 to provide that a certificate of registration satisfies the section's requirements, "regardless of whether the certificate contains any inaccurate information, unless" the following two requirements are met:

> (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and
>
> (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.

17 U.S.C. § 411(b)(1). The PRO IP Act also created a procedure for district courts to seek the advice of the Register of Copyrights as to the effect of allegedly inaccurate information on the validity of a copyright registration. Section 411(b)(2) provides:

---

[1] This requirement applies to all claims for copyright infringement, including counterclaims. *See* 2 MELVILLE B. NIMMER & DAVID NIMMER, NIMMER ON COPYRIGHT § 7.16[B][1][a], at 7-153 (Matthew Bender, Rev. Ed. 2009) (citing *Tuff-N-Rumble Mgmt., Inc. v. Sugarhill Music Publ'g Inc.*, 49 F. Supp. 2d 673, 677 (S.D.N.Y. 1999)).

[2] The Supreme Court clarified in *Reed Elsevier* that § 411(a) is merely a claim-processing requirement, not a jurisdictional requirement. *See Reed Elsevier*, 130 S. Ct. at 1243-48.

> In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration.

*Id.* § 411(b)(2).

In the present motion, Olem Shoe has asked the Court to seek the advice of the Register of Copyrights under § 411(b)(2) regarding the effect of the inaccurate information that Olem Shoe alleges Washington Shoe submitted with its copyright registrations. Olem Shoe's motion included a series of questions for the Court to submit to the Register of Copyrights. The Court held two hearings on the motion on June 9, 2010 and on August 11, 2010. As the Court discussed at the hearings, Olem Shoe's original questions were unclear and suffered from several problems. The Court asked Olem Shoe to submit revised questions. After a couple of iterations, Olem Shoe submitted its latest set of questions on August 19, 2010. (*See* D.E. #141-4).

## II.  Legal Analysis

### A.  Seeking the Advice of the Register of Copyrights Under 17 U.S.C. § 411(b)(2)

Before reaching the merits of Olem Shoe's proposed questions, a discussion of 17 U.S.C. § 411(b)(2) is necessary. The interpretation of § 411(b)(2) appears to be an issue of first impression in the Eleventh Circuit. In fact, the parties (and the Court in its own research) have only been able to find one instance in which a court—the District of Puerto Rico—issued a request to the Register of Copyrights under § 411(b)(2). *See Velazquez-Gonzalez v. Pina*, No. 07-1512CCC (D.P.R. June 1, 2009); *see also* 5 WILLIAM F. PATRY, PATRY ON COPYRIGHT § 17:125.50 (2010) ("Few litigants or courts have been aware of the provision, and as a result it has been used, I believe only once."). Nevertheless, the language of § 411(b)(2) is rather straightforward. A party must allege (1) that inaccurate information was included on an application for copyright registration with knowledge that it was inaccurate, and (2) that the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration. If a party makes these allegations, the statute requires the Court to seek the advice of the Register of Copyrights.

Washington Shoe has advanced several arguments why the Court should not request the advice of the Register of Copyrights. In its opposition brief (D.E. #90), in addition to arguing about the merits of Olem Shoe's questions, Washington Shoe argues (1) that a request to the Register of Copyrights under § 411(b)(2) is an "extremely unusual" measure that only one court

3

has taken; (2) that the issues raised by Olem Shoe have already been fully briefed in connection with Washington Shoe's motion for summary judgment and are ripe for adjudication by this Court; and (3) that a request would only result in undue delay and increased expense. The Court disagrees. For one thing, just because a request under § 411(b)(2) may be "extremely unusual" does not obviate the Court's duty to comply with the statute. And because the statute was enacted in 2008, it is not surprising that only one court has submitted a request under § 411(b)(2). More fundamentally, the statutory language—"shall request"—is mandatory. Simply because the parties have already briefed the issues raised by Olem Shoe does not permit the Court to disregard the compulsory language of the statute.

In its sur-reply (D.E. #106), Washington Shoe argues that the Court's duty to request an opinion from the Register of Copyrights is only triggered if Olem Shoe *proves* the two requirements in § 411(b)(1). In other words, Olem Shoe must "show" that Washington Shoe included information on its applications that it knew was inaccurate, and that the inaccurate information was "so material" that, if known, it would have caused the Register of Copyrights to refuse registration. But that is not what the statute says. Rather, the Court's duty is triggered where "information described under paragraph (1) is *alleged*." 17 U.S.C. § 411(b)(2) (emphasis added).[3]

Accordingly, to the extent Olem Shoe alleges that Washington Shoe submitted inaccurate information with its copyright registrations that would satisfy the two requirements of § 411(b)(1), the Court must ask the Register of Copyrights whether the alleged inaccurate information, if known, would have caused it to refuse registration. Of course, if the Register of Copyrights advises the Court that it would have refused registration, Olem Shoe must still prove its factual allegations.[4]

---

[3] Washington Shoe also argues that the legislative history supports its interpretation of the statute. However, even if that were true (which the Court doubts), the legislative history cannot override the unambiguous language of the statute. *See Desert Palace, Inc. v. Costa*, 539 U.S. 90, 98 (2003) ("[W]here, as here, the words of the statute are unambiguous, the judicial inquiry is complete." (internal quotation marks omitted)).

[4] Although the Court is bound by 17 U.S.C. § 411(b)(2), the Court questions the practicality of the statute. Under a plain reading of § 411(b)(2), the Court is required to seek the advice of the Register of Copyrights regardless of whether the party making the request has any factual basis for its allegations of inaccurate information. Moreover, although the PRO IP Act and § 411(b)(2) appear to have been an attempt by Congress to strengthen copyrights and make enforcement easier, § 411(b)(2) gives a party accused of copyright infringement another weapon to delay the proceedings in district court, as Olem Shoe has done in this case. Finally, the statute

### B. Olem Shoe's Proposed Questions

The Court now turns to the merits of Olem Shoe's proposed questions. Olem Shoe has submitted several versions of its questions. For the purposes of this analysis, the Court uses Olem Shoe's latest amended set of questions, filed on August 19, 2010. (*See* D.E. #141-4).[5]

#### i. Questions 1 and 6 Regarding Prior Publication

Olem Shoe alleges that Washington Shoe inaccurately characterized the Ditsy Dots and Zebra Supreme designs as unpublished when it filed the copyright registrations. According to Olem Shoe, Washington Shoe published the boots by displaying them at a public trade show in Las Vegas from July 30, 2007 to August 1, 2007, and in the case of Zebra Supreme, by selling the boots in retail stores. However, when Washington Shoe filed the Ditsy Dots registration on August 9, 2007, and the Zebra Supreme registration on January 8, 2010, it did not say that the boots had been published. Olem Shoe asks the Court to submit the following questions regarding publication:

> 1. Whether the Copyright Register would have refused registration No. VAu 756-950 for the two-dimensional unpublished work entitled Ditsy Dots had the Copyright Register known that the boots depicted in the photographs deposited for the 2-dimensional artwork had been previously published by [Washington Shoe]?
>
> . . . .
>
> 6. Whether the Copyright Register would have refused the registration No. VAu001007893 for a two-dimensional unpublished work entitled Zebra Supreme-Olem had the Copyright Register known that the boots depicted in the photographs

---

does not indicate whether the Court must accept the advisory opinion of the Register of Copyrights. Ordinarily, a district court is not necessarily bound by the Copyright Office's refusal to register a copyright. *See* 17 U.S.C. § 411(a) ("In any case, however, where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and registration has been refused, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights. The Register may, at his or her option, become a party to the action with respect to the issue of registrability of the copyright claim by entering an appearance within sixty days after such service, but the Register's failure to become a party shall not deprive the court of jurisdiction to determine that issue."). Thus, it seems questionable that a district court is to be bound by the Register of Copyrights' opinion under § 411(b)(2).

[5] Olem Shoe's previous sets of questions contained nine questions. In the latest set, Olem Shoe has deleted Question 8.

> deposited for the 2-dimensional artwork had been previously published by [Washington Shoe]?

(D.E. #141-4 at 2.)

The Court views the topic of these questions to be appropriate under § 411(b)(2). Even Washington Shoe's counsel conceded during the August 11 hearing that Washington Shoe appears to have published the boots before it filed the copyright registrations. (*See* D.E. #140, Hr'g Tr. at 8, Aug. 11, 2010.) Therefore, the Court will seek the advice of the Register of Copyrights on this subject. However, even after the Court has provided Olem Shoe multiple opportunities to revise its questions so that they are understandable to a person who is not familiar with this case, the Court is not satisfied that Olem Shoe has done so. Accordingly, it will re-phrase the questions as follows:

> 1. Would the Register of Copyrights have refused Washington Shoe Company's Registration No. VAu000756950 for 2-dimensional artwork applied to 3-dimensional rain boots ("Ditsy Dots," filed August 9, 2007) if the Register of Copyrights had known that, although Washington Shoe characterized the work as unpublished, Washington Shoe displayed the boots at a public trade show before filing the registration?
>
> 2. Would the Register of Copyrights have refused Washington Shoe Company's Registration No. VAu001007893 for 2-dimensional artwork applied to 3-dimensional rain boots ("Zebra Supreme - Olem," filed January 8, 2010) if the Register of Copyrights had known that, although Washington Shoe characterized the work as unpublished, Washington Shoe displayed the boots at a public trade show and sold the boots in retail stores before filing the registration?

### ii.     Questions 2 and 7 Regarding Alleged Creation by a Third Party

Olem Shoe also alleges that Washington Shoe's copyright registrations are invalid because the patterned fabric used to create Washington Shoe's boots was created by a third party manufacturer not known to Washington Shoe. Olem Shoe asks the Court to submit the following questions:

> 2. Whether the Copyright Register would have refused the [Ditsy Dots] copyright application had the Copyright Register known that the pattern on the fabric of the boot depicted in the photographs deposited by the copyright claimant had been affixed to said fabric by a third party not known to [Washington Shoe]?

6

. . . .

> 7. Whether the Copyright Register would have refused [the Zebra Supreme] registration had the Copyright Register known that the pattern on the fabric of the boot depicted in the photographs deposited by the copyright claimant had been affixed to said fabric by a third party not known to [Washington Shoe]?

(D.E. #141-4 at 2.)

As best the Court can tell, Olem Shoe's theory is as follows:

1. Washington Shoe employees created the Ditsy Dots and Zebra Supreme patterned designs on computers.
2. Washington Shoe then sent electronic files with the designs to China.
3. A manufacturer unknown to Washington Shoe, and not under Washington Shoe's control, affixed the designs to the fabric that Washington Shoe's boot supplier used to manufacture the boots.
4. The act of affixing Washington Shoe's designs to the fabric is a separate copyrightable event.
5. Thus, the unknown manufacturer that affixed the designs to the fabric—and not Washington Shoe—owns the copyrights on the boots depicted in the photographs Washington Shoe submitted to the Copyright Office.

Olem Shoe's theory seems to reflect a fundamental misunderstanding of copyright law. Under Olem Shoe's theory, artists would lose the rights to their works unless they utilized their own manufacturing facilities to turn their works into end-use products. For example, a book printer, not the author, might own the copyright to a book. The Court expressed doubt about Olem Shoe's theory during the hearings and asked Olem Shoe to submit cases to support its theory. In a supplemental brief, Olem Shoe cites just two cases, neither of which is relevant here. Olem Shoe cites *Mazer v. Stein*, 347 U.S. 201 (1954), for the unremarkable proposition that copyright law protects only the expression of an idea, not the idea itself. *See id.* at 217. This would be relevant if Washington Shoe had simply asked a manufacturer to design fabric with, for example, zebra stripes, and the manufacturer created the designs itself. Obviously, Washington Shoe could not then copyright the idea of boots with zebra stripes. Here, however, Washington Shoe created specific designs, complete with dimensions, to be physically applied by others to its boots. Washington Shoe's copyrights cover those designs. The Chinese manufacturer's act of manufacturing fabric with those designs was not a separate copyrightable event.

7

The other case Olem Shoe cites, *MGB Homes, Inc. v. Ameron Homes, Inc.*, 903 F.2d 1486 (11th Cir. 1990), is similarly irrelevant. In *MGB Homes*, the Eleventh Circuit denied a homebuilder's claim of coauthorship of a copyrighted advertising flyer depicting the floorplan of a home. The homebuilder was the "author of the concept" for the home depicted in the flyer. *Id.* at 1487 n.2. However, the homebuilder's only contributions to the final drawings were a "thumbnail sketch of the floor plan he desired . . . and approval authority thereafter." *Id.* at 1493. Someone else actually created the flyer and the floorplan depicted in the flyer. Just as with *Mazer* above, *MGB Homes* might be relevant if Washington Shoe had asked someone else to create the designs for its boots based on an idea or a rough sketch. But that is not the case. Washington Shoe created the final patterned design for its boots.

Because Olem Shoe's questions are based on a flawed theory, it has failed to allege that Washington Shoe submitted inaccurate information to the Copyright Office. Accordingly, because they are irrelevant, the Court will not submit Questions 2 and 7 to the Register of Copyrights.

### iii.    Question 3 Regarding Derivation of Ditsy Dots

Olem Shoe also alleges that Washington Shoe submitted inaccurate information with the Ditsy Dots copyright registration because it failed to disclose that the boots depicted in the photographs submitted the Copyright Office were derived from a pre-existing drawing. Olem Shoe asks the Court to submit the following question:

> 3.    Whether the Copyright Register would have refused the copyright application had the Copyright Register known that the derivative work (boots including the Ditsy Dots pattern applied thereon) depicted in the photographs deposited for the 2-dimensional artwork application filed in 2007 were derived from a pre-existing 2006 drawing created by [Washington Shoe] and the 2006 drawing was not disclosed in the pre-existing material section of the copyright application?

(D.E. #141-4 at 2.)

Olem Shoe's theory here seems to be that the 3-dimensional boots were derived from Washington Shoe's previous 2-dimensional drawing, and that Washington Shoe should have disclosed the existence of the 2-dimensional drawing when it filed its Ditsy Dots registration. Perhaps this theory would have merit if the Ditsy Dots copyright registration at issue here were for a 3-dimensional work. However, the copyright registration is for the 2-dimensional artwork

8

on the boots. Accordingly, Olem Shoe fails to allege any inaccurate information Question 3, and the Court will not submit it to the Register of Copyrights.

### iv. Question 9 Regarding Derivation of Zebra Supreme

Olem Shoe also alleges that Washington Shoe submitted inaccurate information with the Zebra Supreme copyright registration because it failed to disclose that the design was derived from another similar design. Washington Shoe's art director first created a design called "Rose Zebra Supreme" that had roses superimposed on zebra stripes with a silver lining. He then used the Rose Zebra Supreme design to create the Zebra Supreme design by removing the silver lining from the stripes and by removing the roses. (D.E. 79-1, Affidavit of Roel Salonga ¶ 3.) Washington Shoe registered the Rose Zebra Supreme design with the Copyright Office on May 21, 2009 (Reg. No. VAu000988278). When Washington Shoe registered the Zebra Supreme design in January 2010, however, it did identify Zebra Supreme as a derivative work, and it did not list Rose Zebra Supreme as preexisting material. Olem Shoe asks the Court to submit the following question:

> 9. Whether the Copyright Register would have refused the application had the Copyright Register known that the claimant created the pre-existing work (Rose[] Zebra Supreme) Reg. No. VAu 988-27[8] for the same design except the roses and from which the work (Zebra Supreme-Olem) subject of Reg. No. VAu001007893 was derived?

(D.E. #141-4 at 3.)

The Court views the topic of this question to be proper under § 411(b)(2). Accordingly, the Court will submit it to the Register of Copyrights, but it will rephrase the question as follows:

> 3. Would the Register of Copyrights have refused Washington Shoe Company's Registration No. VAu000756950 for 2-dimensional artwork applied to 3-dimensional rain boots ("Ditsy Dots," filed August 9, 2007) if the Register of Copyrights had known that, although Washington Shoe did not identify the work as being a derivative work, Washington Shoe created the artwork by altering its previously registered copyright Registration No. VAu000988278 ("Rose Zebra Supreme," filed May 21, 2009)?

### v. Questions 4 and 5 Regarding "Reconstruction" of Ditsy Dots

Finally, Olem Shoe makes much of the fact that Washington Shoe apparently re-filed photographs for the Ditsy Dots copyright registration in 2009. According to Washington Shoe,

9

the Copyright Office lost the original photographs submitted in 2007 and asked Washington Shoe to submit new photographs. Olem Shoe characterizes this procedure as "unorthodox" and alleges that Washington Shoe's submission in 2009 was an improper "reconstruction" of the registration. Olem Shoe asks the Court to submit the following two questions:

> 4. Whether claimant's filing of two "new" photographs in 2009 for the 2007 copyright registration (Ditsy Dots) would have been refused by the Copyright Register as an improper reconstruction?
>
> 5. Whether claimant's filing of two "new" photographs in 2009 would have been refused by the Copyright Register even if it were to clarify or amplify the registration filed on August 9, 2007?

(D.E. #141-4 at 2.)

Completely lacking from these questions is any allegation of inaccurate information. Olem Shoe does not allege that Washington Shoe submitted inaccurate information when it responded to the Copyright Office's request. Moreover, the questions do not even make sense— Olem Shoe wants the Court to ask the Copyright Office if it would have accepted photographs that it has already accepted. The Court will not entertain such nonsense. Accordingly, the Court will not submit Questions 4 and 5 to the Register of Copyrights.

**III.    Conclusion**

For the foregoing reasons, it is hereby ORDERED that Olem Shoe's motion is GRANTED IN PART, DENIED IN PART. Subsequent to this Order, the Court will issue a request under 17 U.S.C. § 411(b)(2) for the Register of Copyrights.

DONE and ORDERED in Chambers, Miami, Florida, September 3, 2010.

_____
Paul C. Huck
United States District Judge

Copies furnished to:
All Counsel of Record

10