UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-23494-CIV-HUCK/BANDSTRA

OLEM SHOE CORP.,

   Plaintiff / Counter-Defendant,

v.

WASHINGTON SHOE CO.,

   Defendant / Counter-Plaintiff.

_____/

**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**

   This matter is before the Court on the parties' cross-motions for summary judgment. Defendant/Counter-Plaintiff Washington Shoe Co. ("Washington Shoe") seeks summary judgment in its favor for (1) copyright infringement of three copyrights known as "Zebra Supreme" (Registration No. VAu001007893, VA 1-432-334), "Rose Zebra Supreme" (Registration No. VAu988-278)[1] and "Ditsy Dots" (Registration No. VAu756-950, VA 1-420-043); and (2) trade dress infringement for the unregistered trade dresses for Zebra Supreme and Ditsy Dots. D.E. #250. Plaintiff/Counter-Defendant Olem Shoe Corp. ("Olem Shoe") seeks summary judgment in its favor on the entirety of the claims and counterclaims at issue in this action including (1) non-infringement, *inter alia*, of the aforementioned copyrights Zebra Supreme, Rose Zebra Supreme and Ditsy Dots; and (2) non-infringement of the trade dresses for Zebra Supreme and Ditsy Dots. D.E. #254. Since the parties' cross-motions for summary judgment present significantly overlapping issues, the Court will analyze the motions in tandem and decide whether, as to each argument raised, either party is entitled to judgment as a matter of law. For the reasons discussed below, the Court takes the following actions herein:

   (1)   GRANTS summary judgment in favor of Washington Shoe and DENIES summary judgment with respect to Olem Shoe on the copyright infringement

---

[1] After the parties' cross motions for summary judgment were filed, the registration for Rose Zebra Supreme was re-opened, a publication date was added, and the design re-registered as a published design with registration number VA 1-792-044 with an effective date of August 9, 2007. *See* D.E. #381 and #390.

claims addressed herein, except with respect to the new invalidity issues asserted against the Rose Zebra Supreme copyright in Olem Shoe's affirmative defenses filed on November 11, 2011 [D.E. #385];

(2)     DENIES summary judgment with respect to Washington Shoe and GRANTS summary judgment in favor of Olem Shoe on the trade dress infringement and false designation of origin claims addressed herein;

(3)     DENIES summary judgment with respect to Washington Shoe and GRANTS summary judgment in favor of Olem Shoe on the "willful" copyright and trade dress infringement claims addressed herein; and

(4)     DENIES summary judgment with respect to Washington Shoe and GRANTS summary judgment in favor of Olem Shoe on the unfair competition claims addressed herein.

## I.  Background[2]

Olem Shoe and Washington Shoe both sell women's boots.  This case is about two of Washington Shoe's boots called "Ditsy Dots" and "Zebra Supreme"[3] and whether Olem Shoe is infringing upon the patterned designs on the face of such boots with its own boots.  As the names suggest, Ditsy Dots boots are covered in a polka-dotted design and Zebra Supreme boots have a design resembling a zebra's black and white-striped skin.  Below are illustrative and undisputed photographs of Washington Shoe's Ditsy Dots boots against Olem Shoe's Dots boots (D.E. #354, Exhs.  5 and 11) and Washington Shoe's Zebra Supreme boots against Olem Shoe's Zebra boots (D.E. #354, Exhs. 4 and 16):

---

[2] Facts disputed by the parties are indicated as such throughout this section.  The Court notes that in reviewing the cross-motions for summary judgment it views the evidence and all factual inferences drawn therefrom in the light most favorable to the non-moving party.

[3] This case also concerns the copyright for Rose Zebra Supreme from which Zebra Supreme is allegedly derived. Washington Shoe claims that any infringement of Zebra Supreme is also an infringement of Rose Zebra Supreme.  D.E. #250-1.



On October 29, 2009, Washington Shoe's counsel sent Olem Shoe a cease and desist letter indicating that four Olem Shoe boot designs infringe upon Washington Shoe's copyrighted Ditsy Dots design and violate its trade dress rights.  The letter includes small pictures of each of the allegedly infringing boots.  It does not include any identifying information for Washington Shoe's Ditsy Dots copyright registration or a sample of the allegedly infringing work. D.E. #250-5, Exh. #9.  After a response from Olem Shoe's counsel seeking more information, Washington Shoe's counsel sent a follow up letter on November 9, 2009 to Olem Shoe's counsel providing the Ditsy Dots copyright registration on Form VA.  The form indicates that the "Ditsy Dots" copyright was registered to Washington Shoe under registration number VAu-756-950 with an effective date of August 9, 2007.  The copyright was for "[a]rtwork designs applied to useful articles." *Id.*  A copy of the work deposited with the United States Copyright Office was not provided.  On November 16, 2009, Olem Shoe filed the instant action for a judgment declaring, among other things, that Washington Shoe's Ditsy Dots copyright is invalid, not infringed by Olem Shoe or not enforceable and that its trade dress rights are not enforceable or unprotectable. D.E. #1.

On January 7, 2010, Washington Shoe's counsel sent Olem Shoe a second cease and desist letter alleging that Olem Shoe was infringing the copyright and trade dress for another design:  "ZEBRA SUPREME BOOTS."  This letter includes one small picture of the allegedly infringing boot.  It does not include any identifying information for Washington Shoe's Zebra Supreme copyright registration or a sample of the allegedly infringing work. D.E. #250-5, Exh. #9.  One day later, on January 8, 2010, Washington Shoe filed an application to register a work entitled "Zebra Supreme – Olem," and this matured into a Certificate of Registration effective January 8, 2010.  On January 15, 2010, Washington Shoe counterclaimed in this matter for

copyright and trade dress infringement regarding both the Ditsy Dots and Zebra Supreme designs as well as unfair competition with regard to both designs.  D.E. #12.  As an exhibit, Washington Shoe included a picture of the Zebra Supreme design and indicated that the copyright registration was pending in the copyright office.  D.E. #13.   In its amended counterclaim dated February 11, 2010, Washington Shoe included the copyright registration for "Zebra Supreme – Olem" on Form VA.  D.E. #18.   The form indicates that "Zebra Supreme – Olem" was registered to Washington Shoe under registration number VAu-1-007-893 with an effective date of January 8, 2010.  The copyright was for "2d artwork."  *Id.*

Thereafter, Olem Shoe filed a motion to dismiss Washington Shoe's counterclaims.  Olem Shoe had asserted that Washington Shoe's copyrights protect only the two-dimensional drawings filed the copyright office, not the three-dimensional boots.  The Court found on April 2, 2010 that while the utilitarian functions of Washington Shoe's boots are not protected, the designs on the face of the boots, to the extent they have aesthetic value, are eligible for copyright protection.  The Court also found that Washington Shoe had failed to sufficiently allege secondary meaning, a necessary element of its trade dress infringement claims, and granted Washington Shoe leave to amend, which it took. D.E. #47 and #54.

On March 11, 2010, Washington Shoe filed an initial motion for summary judgment limited only to its copyright infringement claims.  D.E. #29.  In response to this motion, Olem Shoe disputed the validity of Washington Shoe's copyright registrations.   D.E. #56.  Olem Shoe alleged that Washington Shoe submitted inaccurate information on these registrations thereby barring Washington Shoe's claim for copyright infringement.  *See* 17 U.S.C. § 411(a) & (b)(1) (indicating that registration is a pre-requisite for a claim for copyright infringement).  On May 1, 2010, Olem Shoe requested leave of this Court to submit questions to the Register of Copyrights (the "Register") for its advisory opinion regarding Washington Shoe's alleged misrepresentations pursuant to the statutory mechanism set forth in 17 U.S.C. § 411(b)(2).   The Court agreed to submit questions to the Register on September 3, 2010.  D.E. #167 and #168.[4]  The allegedly inaccurate information that the Court found to be the proper subject of a request to the Register

---

[4] *See* Court's Order on Motion for Issuance of Request to Register of Copyrights, *Olem Shoe Corp. v. Washington Shoe Co.*, 2010 WL 3505100, (S.D. Fla. Sept. 3, 2010) and Request to the Register of Copyrights Pursuant to 17 U.S.C. § 411(b)(2), Docket Entry # 168 09-23494-CIV, (S.D. Fla. Sept. 3, 2010).

concerned the registrations' characterization of the Ditsy Dots and Zebra Supreme designs as unpublished and its characterization of the Zebra Supreme design as non-derivative.

On October 14, 2010, the Court received the Register's advisory opinion with respect to its questions.  D.E. #209.  The Register indicated that if it had known of the allegedly inaccurate information on the Ditsy Dots' application, it would have nonetheless registered this work.  With regard to the Zebra Supreme design, the Register stated that had it confirmed the alleged pre-registration retail sales of Zebra Supreme boots, it would have refused registration of that work as "unpublished" because retail sales generally constitute publication.  However, pursuant to its general practices, the Register indicated that it would have corresponded with Washington Shoe and that "[c]orrection of such inaccurate information would then allow for registration of the work as a published work."  The Register also stated that had it known that Zebra Supreme was created by altering a previously-registered Washington Shoe work called Rose Zebra Supreme (Registration number VAu 988-278), as alleged, it would have refused registration of that work as "non-derivative."  While the Register indicated that Washington Shoe would have a similar opportunity for amendment on this issue, it indicated that if the amendment included only certain evidence, it would have nonetheless refused registration of a "derivative" Zebra Supreme work.

After receiving the Register's advisory opinion, the parties agreed to confer and seek the Register's further advice and the Court stayed the case.  D.E. #214.  On November 10, 2010, Washington Shoe proceeded to file corrective supplementary copyright registrations for both the Ditsy Dots and Zebra Supreme designs.[5]   D.E.  #218.  The Register subsequently granted the supplementary registrations for both designs.  D.E. #224.  The supplementary registration for Ditsy Dots on Form CA indicates that the "Ditsy Dots" copyright was registered to Washington Shoe under registration number VAu-756-950 in 2007.  The supplementary registration number is VA 1-420-043 with an effective date of supplementary registration of November 22, 2010.   A note indicates that due to online sales in 2006, the status of Ditsy Dots' registration is changed to "published."  D.E. #224-1.  The supplementary registration for Zebra Supreme-Olem on Form CA indicates that the "Zebra Supreme-Olem" copyright was registered with Washington Shoe under registration number VAu 1-007-893 in 2010.  The supplementary registration number is

---

[5] Olem Shoe disputed the *ex parte* nature of Washington Shoe's corrective registrations and the propriety of filing corrective registrations to address the issues raised by the Register's Response.

VA 1-423-334 with an effective date of supplementary registration of November 16, 2010. Rose Zebra Supreme was explicitly excluded from Zebra Supreme's supplementary registration. *Id*. After the filing of cross-motions for summary judgment that are the subject of this order, the Register re-opened the registration for Rose Zebra Supreme, added a publication date, and re-registered it as a published design with registration number VA 1-792-044 with an effective date of August 9, 2007. See D.E. #381 and #390.

In light of these supplementary registrations, Washington Shoe moved for and was granted leave to amend its counterclaims. D.E. #233. Pursuant to a Court order and in light of the amended pleadings, the parties filed the cross-motions for summary judgment at issue herein.[6] Responses and replies to these motions for summary judgment have been filed and the motions are ripe for adjudication.

## II. Analysis

### A. Standard of Review

Summary judgment is proper only where the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The purpose of summary judgment is "to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587(1986) (*quoting* Fed. R. Civ. P. 56 advisory committee's note). In *Celotex Corp. v. Catrett,* the Court held that summary judgment should be entered only against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing

---

[6] The parties had previously filed three other summary judgment motions not described above. D.E. #135, #143 and #144.

on an essential element of the case with respect to which she has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23(1986).

To prevail, the moving party must do one of two things: (1) show that the non-moving party has no evidence to support its case, or (2) present "affirmative evidence demonstrating that the non-moving party will be unable to prove its case at trial." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir. 1991) (en banc); *Young v. City of Augusta. Ga.*, 59 F.3d 1160, 1170 (11th Cir. 1995). In making this determination, the court must view the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. *Witter v. Delta Air Lines, Inc.*, 138 F.3d 1366, 1369 (11th Cir.1998) (citations and quotations omitted).

If the moving party successfully discharges this initial burden, the burden shifts to the non-moving party to establish, by going beyond the pleadings, that there is a genuine dispute[7] as to facts material to the non-moving party's case. *Young*, 59 F.3d at 1170. The non-moving party must do more than rely solely on its pleadings, and simply show that there is some metaphysical doubt as to the material facts. *Matsushita*, 475 U.S. at 586-87. A genuine dispute of material fact does not exist unless there is sufficient evidence favoring the non-moving party for a reasonable jury to return a verdict in its favor. *Anderson v. Liberty Lobby. Inc.*, 477 U.S. 242, 249 (1986); *Ritch v. Robinson-Humphrey Co.*, 142 F.3d 1391, 1393 (11th Cir. 1998); *EEOC v. Amego*, 110 F.3d 135, 143(1st Cir. 1997); *Thornton v. E.I. Du Pont De Nemours and Co., Inc.*, 22 F.3d 284, 288 (11th Cir. 1994). A dispute is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). A dispute is "material" if it is a legal element of the claim under applicable substantive law which might affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Allen*, 121 F.3d at 646.

A mere "scintilla" of evidence in favor of the non-moving party, or evidence that is merely colorable or not significantly probative is not enough to meet this burden. *Anderson*, 477 U.S. at 252. *See also Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996)

---

[7] In 2010, Rule 56 (a) was amended to replace the word "issue" with the word "dispute" since the latter word "better reflects the focus of a summary judgment determination." The advisory committee noted, however, that the change was non-substantive and that the "standard for granting summary judgment remains unchanged." Fed. R. Civ. P. 56 advisory committee's note.

(conclusory allegations and conjecture cannot be the basis for denying summary judgment). Where a reasonable fact finder may "draw more than one inference from the facts, and that inference creates a general issue of material fact, then the court should refuse to grant summary judgment." *Barfield v. Brierton*, 883 F.2d 923, 933-34 (11th Cir. 1989).

Under these standards, courts have "regularly granted summary judgment in copyright cases where it is clear that the plaintiff cannot make out the elements of the claim" of copyright infringement. *Siskind v. Newton-John*, 1987 U.S. Dist. LEXIS 4084, 1987 WL 11701 at *4 (S.D.N.Y. May 22, 1987). The Eleventh Circuit has "recognized that 'non-infringement may be determined as a matter of law on a motion for summary judgment, either because the similarity between two works concerns only non-copyrightable elements of the plaintiff's work, or because no reasonable jury, properly instructed, could find that the two works are substantially similar.'" (internal citations omitted). *Oravec v. Sunny Isles Luxury Ventures, L.C.*, 527 F.3d 1218 (11th Cir. 2008). Other courts have also specifically approved the use of summary judgment to find infringement as a matter of law. *See e.g., Knickerbocker Toy Co., Inc. v. Genie Toys Inc.*, 491 F.Supp. 526, 528, 211 U.S.P.Q. 461 (D.C. Mo. 1980), citing *Ferguson v. National Broadcasting Co.*, 584 F.2d 111 (5th Cir. 1978); *Rogers v. Koons*, 960 F.2d 301, 22 U.S.P.Q.2d 1492 (2nd Cir. 1992); *Silver Ring Splint Co. v. Digisplint, Inc.*, 543 F. Supp.2d 509 (W.D. Va. 2008); *Express, LLC v. Fetish Group, Inc.*, 424 F. Supp.2d 1211 (C.D. Cal. 2006).

### B. Registration as a Precondition for an Infringement Action

Before reaching the substantive question of whether Washington Shoe has established copyright infringement as a matter of law, it must first be established that Washington Shoe has registered its copyright in accordance with the Copyright Act as a precondition to this infringement action. *See* 17 U.S.C. § 411(a) ("[N]o civil action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."). It is undisputed that the Register recently granted supplementary registrations for both of the previously registered Ditsy Dots and Zebra Supreme designs in the aftermath of challenges from Olem Shoe that Olem Shoe claimed would cause the Register to refuse or cancel registration. It is also undisputed that, after the filing of cross-motions for summary judgment that are the subject of this order, the Register re-opened the registration for Rose Zebra Supreme, added a publication date, and re-registered it as a published

8

design with registration number VA 1-792-044 with an effective date of August 9, 2007.  See D.E. #381 #390.  Such registrations create a presumption that the copyrights are valid.  17 U.S.C. 410(c) ("In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate"); *Montgomery v. Noga*, 168 F.3d 1282, 1289 (11th Cir. 1999).  Such presumption thereby shifts the burden to Olem Shoe to provide invalidity. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 683 F.2d 821 (11th Cir. 1982) (production of certificate of copyright registration shifts the burden of proof to defendant to prove invalidity). In its motion for summary judgment and in its response to Washington Shoe's motion for summary judgment, Olem Shoe challenges all three of Washington Shoe's copyright registrations at issue in this case.  Thereby, Olem Shoe disputes Washington Shoe's ability to proceed on its infringement counterclaims for failure to register its copyright claim in accordance with the applicable requirements of the Copyright Act.[8]  As discussed above, Olem Shoe previously made similar challenges prior to the supplementary registrations which resulted in the Court seeking an advisory opinion from the Register.[9] This resulted in Washington Shoe submitting supplementary registrations to cure the defects found in its original registrations.

To assess whether Washington Shoe properly registered its copyrights, one must look to Section 411(b) which qualifies Section 411(a):

> (1) A certificate of registration satisfies the requirements of this section and section 412 regardless of whether the certificate contains any inaccurate information, unless—
> (A) the inaccurate information was included on the application for copyright registration with knowledge that it was inaccurate; and
> (B) the inaccuracy of the information, if known, would have caused the Register of Copyrights to refuse registration.
> (2) In any case in which inaccurate information described under paragraph (1) is alleged, the court shall request the Register of Copyrights to advise the court whether the inaccurate information, if known, would have caused the Register of Copyrights to refuse registration. 17 U.S.C. § 411(b).

---

[8] As indicated in this Court's Order on Motion for Issuance of Request to Register of Copyrights, *Olem Shoe Corp. v. Washington Shoe Co.*, 2010 WL 3505100 at *1 n.1, (S.D. Fla. Sept. 3, 2010), the registration requirement of Section 411(a) applies to all copyright infringement claims, including counterclaims.

[9] *See supra* footnote 3.

To the extent Olem Shoe alleges that Washington Shoe included inaccurate information in its supplementary registrations that it knew was inaccurate, this Court is obligated to request that the Register advise it as to whether the inaccurate information, if known, would have caused the Register to refuse registration.[10]   The Register, however, has advised the Court that where the Court "concludes that the bare allegations are unsupported by any facts, the [C]ourt would be free to refrain from issuing requests to the Register."  D.E. #209.  To the extent the Register has already offered clear guidance on how it would handle a matter in issue, the Court similarly believes it may refrain from re-issuing duplicative or self-evident questions.

First, with respect to the Zebra Supreme supplementary registration (Va 1-432-334, effective November 16, 2010), Olem Shoe argues that Washington Shoe failed to disclose information that would have caused the Register to cancel the Zebra Supreme registration.   In submitting the supplementary registration, Olem Shoe asserts that Washington Shoe did not inform the Copyright Office that Zebra Supreme's pre-existing work, Rose Zebra Supreme was itself a derivative work, derived from another Washington Shoe design.  As evidence, Olem Shoe cites the testimony of Roel Salonga, Washington Shoe Art Director, who claimed to have designed Zebra Supreme by modifying his own prior version of such designs.  Based on this evidence, Olem Shoe claims that Washington Shoe was obligated to disclose Salonga's earlier versions as a pre-existing work for Zebra Supreme to the Register.  By only disclosing the final version of the Rose Zebra Supreme design as a pre-existing work, Olem Shoe claims that Washington Shoe included inaccurate information in its application.  Olem Shoe, however, provided no evidence that the first prior version was in the public domain or was registered or sold.  A rule requiring copyright applicants to disclose all drafts or unfinished versions of their design or product would be unreasonable and unnecessary to accomplish the goals of the Copyright Act.  Indeed, the Copyright Compendium II at § 626.01(a) indicates that a statement of a pre-existing material for a derivative work is not required "unless a substantial amount of the material incorporated in the derivative work is in the public domain or has been registered or

---

[10] This Court previously analyzed subsection (b)(2) at length (*see supra* footnote 3), which to this Court's knowledge has been used in only one other case.   As explained in the Court's decision, if a party to an infringement action alleges that inaccurate information on a registration was included knowingly and that knowledge of this information would have resulted in refusal of registration, then the statute requires a court to submit a request to the Register of Copyrights.

published previously." The cases cited by Olem Shoe for the proposition that Washington Shoe was required to disclose prior drafts of the Zebra Supreme design are all distinguishable as they involve previously registered or published pre-existing works or works in the public domain. *See Russ Berrie & Co., Inc. v. Jerry Elsner Co., Inc.*, 482 F. Supp. 980, 988 (S.D.N.Y. 1980) (public domain); *Vogue Ring Creations v. Hardman*, 410 F. Supp. 609, 615 (D.R.I.) (published work); *GB Marketing USA Inc. v. Gerolsteiner Brunnen GmbH & Co.*, 782 F. Supp. 763, 774-75 (W.D.N.Y. 1991) (published work); *Garner v. Sawgrass Mills Limited Partnership*, 1994 WL 829978, at *8 (D. Minn. Dec. 22, 1994). Therefore, the Court finds that Washington Shoe's statement that Rose Zebra Supreme was the only pre-existing work for Zebra Supreme was not inaccurate as no evidence provided by Olem Shoe sufficiently supports this allegation. As a result, it would not warrant a request to the Register or otherwise disturb Washington Shoe's ability to proceed in this action.

Second, Olem Shoe alleges misrepresentations on the Rose Zebra Supreme registration (VAu 988-278, effective May 21, 2009). Olem Shoe argues that Washington Shoe was required to disclose Salonga's prior draft of this design as a pre-existing work. For the reasons discussed above, Salonga's draft design is not a pre-existing work that Washington Shoe was required to disclose and thus not disclosing such work did not cause an inaccuracy that would warrant a request to the Register or otherwise disturb Washington Shoe's ability to proceed in this action.

Third, Olem Shoe alleges that Washington Shoe misrepresented the Rose Zebra Supreme work as "unpublished" on the registration even though it had been sold, and therefore was "published," prior to the date of registration. While the Rose Zebra Supreme certificate of registration filed in this action does not state that the work is unpublished, the pre-fix "VAu" signifies an unpublished work which implies that the application failed to disclose that the work was previously published. The certificate of registration attached to Washington Shoe's counterclaim clearly indicates an effective date of May 21, 2009 and has such a pre-fix. Interestingly, the copy of the application for registration that Washington Shoe claims to have used to apply for registration clearly states that Rose Zebra Supreme had been published as of April 20, 2007. Olem Shoe characterizes this copy as a "sleight of hand" saying that "[t]here is no evidence that this application was ever submitted or what deposit was submitted with it." It conjectures that the Register did not use such application as the basis for registration since such application would have led the Register to register a published, rather than an unpublished, work.

However, it has not offered any evidence to support its conjecture.  Nonetheless, if Olem Shoe is correct factually, its argument here regarding an inaccuracy in publication status is nearly identical to one of its previous arguments for which this Court sought the advice of the Register.  Under the earlier argument, that was with respect to Zebra Supreme, this Court "inquired whether the Register would have refused registration for Zebra Supreme-Olem if she had known that, although Washington Shoe characterized the work as unpublished, Washington Shoe . . . sold the Zebra-Supreme Olem boots in retail stores before submitting the application for registration."  D.E. #209.  In response, the Register stated "the Office would follow its established practice and correspond with the applicant regarding such information."  *Id.*  While the "Office would have refused to register a claim to copyright in Zebra-Supreme-Olem as unpublished, in the course of corresponding with the applicant the Office could annotate or amend the application to indicate the work had indeed been published on the date of the first retail sales (internal citation omitted)."  *Id.*  "Correction of such inaccurate information would then allow for registration of the work as a published work."  *Id.*  This is precisely what occurred with the Zebra Supreme registration.  While the Register already provided this guidance in the Zebra Supreme context, which would suggest a similar outcome in the Rose Zebra Supreme context, the Court felt it would nonetheless be prudent to ask the parties whether they thought it would be necessary for Washington Shoe to correct this registration in order for this action to proceed.  D.E. #367.  At a hearing on October 21, 2011, Olem Shoe's counsel argued that, in spite of this precedent, the Register might refuse registration entirely based on the inaccuracy in publication status and that it would be necessary for Washington Shoe to correct it.  D.E. #387.  He stated, "I agree with the Court that they could go back to the copyright office and try to correct that, and if they correct it within time, then fine."  *Id.*  Washington Shoe thereby took the necessary steps to notify the Register of the inaccuracy and seek to have it corrected.  As a result, the registration for Rose Zebra Supreme was re-opened, a publication date was added, and the design re-registered as a published design with registration number VA 1-792-044 with an effective date of August 9, 2007.  *See* D.E. #381 and #390.  Since the Register did not refuse the registration of Rose Zebra Supreme with full knowledge of the publication status inaccuracy, it would be duplicative and cause unnecessary delay to seek a new advisory opinion from the Register on this same issue.  Thus, even if Washington Shoe's application contained an inaccuracy, the Court finds that Olem Shoe has not alleged any inaccurate information that, if

known, would have caused the Register to refuse registration of Rose Zebra Supreme.  Thus, such alleged inaccuracy does not disturb Washington Shoe's ability to proceed in this action.

Finally, Olem Shoe alleges inaccuracies on the Ditsy Dots registration (VAu 756-950, effective August 9, 2007) and supplementary registration (Va 1-420-043, effective November 22, 2010).  Olem Shoe asserts that the registrations for this design failed to disclose pre-existing material and, therefore, improperly did not seek registration of this work as a derivative work.  In support, Olem Shoe points to boots Washington Shoe sold "depicting dots," the "standard polka-dot design existing in the public domain," and sealed documents that show earlier Washington Shoe boot patterns similar or identical to the registered Ditsy Dots design, some also bearing the name "Ditsy Dots" and another entitled "Sprinkles."  In light of the supplementary registration recently issued by the Register for Ditsy Dots, Olem Shoe is effectively contending, with respect to patterns depicting dots and the standard polka-dot design existing in the public domain, that the Register did not have knowledge of such designs.  In essence, if the Register knew of such designs, it would have refused registration.  Even treating this alleged failure to disclose as an inaccuracy included on the application,[11] it would strain credulity to suggest that the Register did not have knowledge that other patterns depicting dots are sold in the marketplace and that all polka-dots, in the broadest sense, are derived from the standard polka-dot that is part of the public domain.  Since we infer such knowledge on the part of the Register, we believe its willingness to approve the registration in spite of such knowledge is a clear indication that such disclosure was not material to the registration's validity. In light of the fact that the Register has now granted the registration of this copyright twice and, in correspondence with Washington Shoe, has clearly stated the defects it felt were consequential (D.E. 254-3), it would cause unnecessary delay to seek a new advisory opinion from the Register on this issue.  With respect

---

[11] This Court notes that Section 411(b), on its face, only pertains to "inaccurate information . . . *included* on the application for copyright registration" (emphasis added).  Olem Shoe does not allege, much less offer evidence in this instance, that inaccurate information was included on Washington Shoe's application.  Rather, Olem Shoe alleges that required information was excluded which thereby made registration of this work as "non-derivative" inaccurate.  This claim is thus distinguishable from their claim with respect to Zebra Supreme where they alleged that inaccurate information was affirmatively disclosed.  While the Court could dispose of this claim based on Olem Shoe's failure to allege and prove an inaccuracy on the face of the application, it is not necessary to do so where we can infer knowledge on the part of the Register that would not have caused the Register to refuse such registration.

to the sealed documents, it is unclear whether these boot designs were sold, i.e. published; although the design summaries in the record indicate "Sample Request" or "Sample Sending Dates," suggesting, although far from conclusively establishing, retail sale.  D.E. #79-2.  As indicated above, so long as Washington Shoe's prior boot designs were not registered, published or in the public domain, it was not required to disclose this material as a "pre-existing work" for purposes of registering a derivative work.  *See* Copyright Compendium II § 626.01(a). Since Olem Shoe has not established that any of the prior boot designs were registered, published or in the public domain, no pre-existing work for Ditsy Dots was required to be disclosed. Accordingly, the Court finds that Washington Shoe's alleged failures to disclose in this instance would not warrant a request to the Register or otherwise disturb Washington Shoe's ability to proceed in this action.

C.  *Copyright Infringement*

To establish copyright infringement, Washington Shoe must prove "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original."  *Baby Buddies, Inc. v. Toys "R" US, Inc.* 611 F.3d 1308, 1315 (11th Cir. 2010) (*citing Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991)).  Olem Shoe asserts that the undisputed facts show that Washington Shoe has failed to establish either element and that non-infringement of the three copyrights at issue should be found as a matter of law. Washington Shoe asserts, on the other hand, that the undisputed facts show that it has met its burden to establish both elements of copyright infringement and that such infringement should be found as a matter of law.

1.  <u>Ownership of Valid Copyright</u>

Ownership of a valid copyright comprises two elements: originality and compliance with the Copyright Act's statutory formalities.  *Bateman v. Mneumoncis*, Inc., 79 F.3d 1532, 1541 (11th Cir. 1996) ("To satisfy Feist's first prong, a plaintiff must prove that the work . . . is original and that the plaintiff complied with applicable statutory formalities." (internal quotations omitted)).  In addition to the alleged inaccuracies discussed in the prior section, Olem Shoe has

challenged Washington Shoe's Zebra Supreme and Ditsy Dots[12] copyrights based on both (1) lack of originality and (2) non-compliance with statutory formalities.  Under the Copyright Act, as discussed above, registration is prima facie evidence of the validity of the copyright, which shifts the burden to the defendant to show invalidity.  In light of the copyright registrations for Zebra Supreme, Rose Zebra Supreme and Ditsy Dots, which are presumed valid, Olem Shoe has the burden to demonstrate that Washington Shoe's works are unoriginal or did not comply with the applicable statutory formalities.  *See Montgomery*, 168 F.3d at 1289 (finding that defendant had burden to demonstrate work's unoriginality due to the registration's presumption of validity); 4-13 Nimmer on Copyright § 13.01 (stating that a copyright registration certificate is prima facie evidence of the satisfaction of statutory formalities).  Olem Shoe also makes a third argument with regard to the Ditsy Dots copyright only:  it argues that Washington Shoe is not the owner of this design as a work for hire.

### a)  Originality

For purposes of copyright law, originality "means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."  *Feist*, 499 U.S. at 345.  Olem Shoe's arguments with respect to Ditsy Dots and Zebra Supreme are each considered in turn.  The Court does not consider herein the new issues that Olem Shoe has raised with respect to Rose Zebra Supreme in its affirmative defenses filed on November 11, 2011 [D.E. #385].

First, Olem Shoe argues that the Ditsy Dots design does not rise to the level of originality required for copyright protection.  It asserts that polka-dots are a generic design in the public domain for which no copyright protection is available.  Olem Shoe does not dispute that Ditsy Dots' author independently created the design – that is, from her own mind as opposed to

---

[12] Olem Shoe only challenges in its motion for summary judgment Rose Zebra Supreme's validity on the bases already discussed in the previous section.  However, Olem Shoe has raised new issues with respect to Rose Zebra Supreme in its affirmative defenses filed on November 11, 2011, specifically relating to originality and compliance with the Copyright Act's statutory formalities  [D.E. #385].  As indicated in the Order dated November 30, 2011 [D.E. #395], the parties may supplement their motions for summary judgment with respect to the new issues raised in Olem Shoe's affirmative defenses, which  this Court has not yet addressed.

copying from another work.[13]  Rather, Olem Shoe argues that the design is insufficiently creative because polka dots are a generic, commonplace, public domain design.

Copyright law requires only a minimal level of creativity.  *Feist*, 499 U.S. at 345 ("[T]he requisite level of creativity is extremely low; even a slight amount will suffice.")  However, of potential relevance to this action, "familiar symbols or designs" as well as "coloring" are not subject to copyright.   37 C.F.R. § 202.1.   The Ditsy Dots design consists of a distinct arrangement of big dots and small dots.[14] In addition, it is readily apparent that Olem Shoe uses proportionately equivalent big dots and small dots that are the same as those arranged by Washington Shoe.[15]  Washington Shoe's copyright registration deposit for Ditsy Dots contains photographs of such designs with both all white dots and with multi-color dots.  D.E. 287-2.

The Court is not persuaded by Olem Shoe's arguments that the Ditsy Dots design is insufficiently original.  Olem Shoe relies on *Royal Printex, Inc. v. Unicolors, Inc.,* No. CV 07-05395-VBK, 2009 U.S. Dist. LEXIS 60375 (C.D. Cal. July 8, 2009) for that notion that "[p]olka-dots (regardless of size) are a familiar and generic design and design element in the public domain, for which no copyright protection is available."  D.E. #254.   In *Royal Printex, Inc.,* 2009 U.S. Dist. LEXIS 60375, at *10,  a district court found only that a daisy flower design with a polka dot background was not original because the flower portion of the design was not independently created by the claimant and the polka dots were "generic" and "seemingly identical" to "background polka-dots" in a separately copyrighted design.  This suggests that such polka-dot design, like the flower design, was not independently created.  The court in *Royal*

---

[13] Although, as discussed below, Olem Shoe disputes that Ditsy Dots' author was a Washington Shoe employee at the time of the work's creation and, hence, argues that it is not a "work made for hire."

[14] We analyze this arrangement from the perspective of an average lay observer in the "substantial similarity" section of this opinion herein.

[15]  According to Washington Shoe, the Ditsy Dots design consists of vertical lines of circular dots alternating between small dots (5 millimeters in diameter) and big dots (7 millimeters in diameter) and horizontal and diagonal lines of circular dots spaced 16 and 19 millimeters apart. D.E. #371-1.  While these measurements are based on an Olem boot acquired by Washington Shoe, the Court presumes that Washington Shoe's alleged dimensions apply equally to its Ditsy Dots design given that Washington Shoe claims that Olem Shoe's design copies its design's exact "dot size, spacing, and distribution." While Olem Shoe observes that the parties did not jointly take such measurements, it does not offer contrary evidence with respect to such measurements.  D.E. #375.

*Printex* did not analyze any artistic elements of the polka dot background or explain why the background was "generic."  Furthermore, the court did not find, as Olem Shoe suggests, that all polka-dots (regardless of size) are, by their nature, generic. Certainly, the court did not address how the arrangement of the polka-dots would bear on such analysis. *Cf.  Prince Group, Inc. v. MTS Products*, 967 F. Supp. 121, 125 (S.D.N.Y. 1997).   Olem Shoe also relies on *Sherry Manufacturing Co., Inc. v. Towel King of Florida, Inc.*, 753 F.2d 1565, 1568-1569 (11th Cir. 1985),[16] *Donald v. Zack Meyer's T.V. Sales and Service*, 426 F.2d 1027, 1030 (5th Cir. 1970) and *Kate Aspen, Inc. v. Fashioncraft-Excello, Inc.*, 370 F. Supp. 2d 1333, 1338 (N.D.Ga. 2005) for the notion that "any modification of the polka-dots . . . must be regarded as trivial, and simply too insignificant to warrant a finding of originality for purposes of copyright protection."   In these cases, the works at issue embodied only trivial variations on clearly identified public domain or copyrighted works—in *Sherry,* a beach towel design with only subtle changes to the dimensions of the beach, trees and water from the design in the public domain, in *Donald*, a form agreement that was striking strikingly similar to form agreements published in numerous form books, many of which are themselves copyrighted, and in *Kate Aspen*, wedding favors with only slight size and proximity reductions from those in the public domain.   These variations were found to be insufficiently original to warrant copyright protection.

By contrast, in a more analogous case to the instant case, a court found a polka-dot design met the level of creativity and originality required by Copyright law.  In *Prince Group, Inc.,*, 967 F. Supp. at 125, a district court found that a polka-dot fabric pattern, "Mega Dot," met the threshold of creativity and, hence, originality required for a valid copyright.  The court found that the polka dots at issue were not perfect circles, but rather were irregularly shaped and shaded around the perimeter.  Even if the dots on their own were insufficiently creative, the court found that the arrangement of the dots conferred the required creativity/originality:

---

[16] The Court notes that a later Eleventh Circuit opinion suggests that *Feist*'s very low threshold for originality overruled *Sherry*'s originality test.  *Montgomery v. Noga*, 168 F.3d 1282, 1291 n.12 (11th Cir. 1999) ("*Feist* resolved a possible tension in our precedent regarding the test for establishing originality.  *Compare Sherry Mfg. Co. v. Towel King of Fla., Inc.*, 753 F.2d 1565, 1568 (11th Cir. 1985) (noting that 'in order to qualify for a separate copyright, the derivative work must contain some *substantial*, and not merely trivial, originality' (emphasis added)), with *Original Appalachian Artworks, Inc. v. The Toy Loft, Inc.,* 684 F.2d 821, 824-25 (11th Cir. 1982) (discussing the '*minimal* degree of originality necessary for copyright protection' (emphasis added)).")

the decision to place the polka dots in imperfect and conflicting diagonal lines at varying distances from each other giving the appearance of randomness, distinguishes this arrangement from the regularity of the generic polka-dot design; thus, establishing a sufficient level of creativity for copyright validity.

967 F. Supp. at 125.  Here, the dots in the Ditsy Dots design are not shaded and, for the most part, are not irregularly-shaped.  *See* D.E. # 234-1 (Third Amended Complaint); various exhibits to D.E. # 354 (Parties' Undisputed Photographs).  The irregularities in dot-shape, which occur toward the bottom and sole of the Ditsy Dots boot, surely derive from the process of stretching a two-dimensional design over a three-dimensional boot, and, indeed, this is the position taken by Olem Shoe.  Because the utilitarian aspects of the boot, as opposed to artistic decision-making, create the irregularities in dot shape, these shape irregularities cannot form a basis for copyright protection.[17]  On the other hand, the particular arrangement of different sized dots at varying distances along vertical and horizontal planes, like the arrangement in *Prince Group*, is an artistic decision that distinguishes Ditsy Dots from generic polka dots – it is not merely a uniform change in dimension, size or proximity from some specifically identifiable polka-dot pattern that separately exists.  Olem Shoe's failure to identify such a separately existing pattern, as opposed to identifying numerous different patterns, is strong evidence of the notion that it did not exist before Washington Shoe created it.  Washington Shoe's polka-dot design therefore satisfies the low standard of copyright creativity.  *Cf. Folio Impressions, Inc. v. Byer Ca.*, 937 F.2d 759, 765 (2d Cir. 1991) (finding that artistic decision to place roses in straight rows was sufficiently original to warrant copyright protection for that arrangement of roses on a fabric design).

Olem Shoe's expert opinion does not create an issue of fact regarding the design's originality.  Olem Shoe's expert states that the Ditsy Dots design is not sufficiently creative and original because the difference in size between the alternating dots in the design is "very slight" and unnoticeable to "an ordinary observer," and because polka-dot patterns in the public domain contain dots of varying sizes.  *See* D.E. # 252-1 at ¶ 6 (Goldaper Declaration).  Olem's expert attaches compiled photographs of clothing and shoes with polka-dot patterns in support.

---

[17] As explained in the Court's Order Granting in Part and Denying in Part Motion to Dismiss (D.E. # 47), only the aesthetic, as opposed to utilitarian value, of the designs are eligible for copyright protection.

However, Olem Shoe does not point to a particular polka-dot pattern in the public domain or subject to copyright that Ditsy Dots copied and, without more, cannot carry its burden to show lack of originality.  By contrast, Washington Shoe can point to its own copyrighted design to show Olem Shoe's design already had a separate existence. The idea of the polka-dot can be expressed in an infinite number of particularized forms and Ditsy Dits represents one such particularized form.  By contrast, in *Sherry* and *Kate Aspen*, particular public domain designs were identified allowing the court to clearly see that the two works portrayed the same particularized expression.  In *Donald*, existing form agreements were identified allowing the court to clearly see that the copyrighted form language had similarly been expressed by others in the same fashion.  The undisputed facts are that the Ditsy Dots design was independently created and the Court finds that the design's particular, artistic arrangement of dots meets the level of creativity and originality required for copyright protection.

Second, Olem Shoe claims that Zebra Supreme lacks the requisite creativity and originality required for a derivative work.  Olem Shoe's expert asserts that zebra-stripe patterns are generic and in the public domain.  However, as with the Ditsy Dots claim, Olem Shoe does not point to a particular zebra-stripe pattern in the public domain from which the Zebra Supreme design was copied.   This statement, without more, is thus insufficient to establish lack of originality.[18]  *See Sherry,* 753 F.2d at1568-1569 (11th Cir. 1985)[19] and *Kate Aspen,* 370 F. Supp. 2d at1338 (N.D.Ga. 2005); *see also Prince Group, Inc.*, 967 F. Supp. at 125 ("There must be more than Defendants' meager claim to support the invalidity of the Plaintiff's copyright.").

---

[18] The statement of Olem Shoe's expert that Zebra Supreme is insufficiently original as compared to the previous drafts of the design is also misplaced.  As discussed above, only pre-existing works that are registered, published or in the public domain are considered for purposes of establishing the originality of a derivative work.

[19] Note that a later Eleventh Circuit opinion suggests that *Feist*'s very low threshold for originality overruled *Sherry*'s originality test.  *Montgomery v. Noga*, 168 F.3d 1282, 1291 n.12 (11th Cir. 1999) ("*Feist* resolved a possible tension in our precedent regarding the test for establishing originality.  *Compare Sherry Mfg. Co. v. Towel King of Fla., Inc.*, 753 F.2d 1565, 1568 (11th Cir. 1985) (noting that 'in order to qualify for a separate copyright, the derivative work must contain some *substantial*, and not merely trivial, originality' (emphasis added)), with *Original Appalachian Artworks, Inc. v. The Toy Loft, Inc.,* 684 F.2d 821, 824-25 (11th Cir. 1982) (discussing the '*minimal* degree of originality necessary for copyright protection' (emphasis added)).")

With regard to Zebra Supreme as a derivative work based on Rose Zebra Supreme, Olem Shoe also argues that the additional matter claimed on its supplementary registration is insufficient to confer originality. *See Montgomery*, 168 F.3d at 1291 n.12 ("In order to qualify for a separate copyright as a derivative or collective work, the additional matter injected in a prior work . . . must constitute more than a minimal contribution." (internal quotations omitted)). The supplementary registration provides that the new material included in Zebra Supreme, as compared to Rose Zebra Supreme, is, as follows:

1- Roses from Rose Zebra Supreme are removed.
2- Silver lining appearing on Zebra Supreme is added.
3- Orientation and scale of the background pattern are different; specifically, Zebra Supreme contains about 80% of the zebra stripe design from Rose Zebra Supreme due to the change in scale and orientation.
4- Rose Zebra Supreme has a white background, whereas Zebra Supreme does not have any white but is a mix of grey, black, and silver.
5- The two designs have a different artistic look and feel overall. Rose Zebra Supreme has a high-end playful feel and Zebra Supreme has a rock-and-roll vibe.

The Register reviewed and accepted this supplementary registration with this additional material. Olem Shoe wholly fails to satisfy its burden to overcome the presumption of validity, and hence originality, conferred by the supplementary registration. Olem Shoe relies primarily on the Register's earlier statements regarding Zebra Supreme in its advisory opinion to the Court's certified questions and its correspondence with Washington Shoe regarding the supplementary registration. For instance, Olem Shoe cites to the Register's observation that removal of rose designs and addition or removal of a silver lining that simply follows the contours of black stripes were not additional material sufficient to create original authorship. Whatever the Register's earlier comments regarding Zebra Supreme, it engaged in subsequent correspondence with Washington Shoe regarding this work and granted the supplementary registration. If anything, the Register's correspondence with Washington Shoe regarding the Zebra Supreme supplementary registration shows that the Register carefully considered and, then, accepted the originality of this derivative work. In an e-mail regarding Washington Shoe's applications for supplementary registration the Register asked for additional information to show that (1) the silver striping does not merely follow the contours of the blank [sic] stripes and (2) that the preexisting black stripes were artistically altered to conform to the L-shape of the boot.

Washington Shoe responded with a detailed memorandum providing such information and, very soon thereafter, the Register issued the supplementary registration. *See* D.E. # 254-1-3. Olem Shoe's citations to statements of the Register regarding this work, many of which were taken out of context, do not demonstrate that Zebra Supreme is not entitled to protection as a derivative work. In addition, Olem Shoe argues that the change in the background color from white in Rose Zebra Supreme to gray in Zebra Supreme is insufficiently original. *See* 37 C.F.R. § 202.1 (stating that coloring is not subject to copyright protection). This argument is without merit because Zebra Supreme seeks to protect the pattern's particular arrangement of colors, shapes and flowers, not color alone. *See Feist*, 499 U.S. at 348 (holding that "choices as to selection and arrangement" so long as they are made independently and with a minimal degree of creativity are sufficiently original to warrant copyright protection).

### b)   Compliance with Statutory Formalities

In addition, Olem Shoe asserts that Washington Shoe's registrations for the Ditsy Dots and Zebra Supreme designs do not comply with the Copyright Act's requirement regarding deposit copies. *See* 17 U.S.C. § 408(b) (requiring that the registration deposit include, depending on the circumstances, one or two complete copies of the work).[20] A deposit copy, in this case, refers to a complete copy of the best edition of the work deposited with the Copyright Office. See 17 U.S.C. § 407. Olem Shoe argues that the photographs of the boots included as part of both the Ditsy Dots and Zebra Supreme deposits do not depict the entire boot—that is, all facets and sides of the boot and pair of boots— and, hence, are not proper "complete copies." In support, Olem Shoe cites the statutory definition of "copies," as something "from which the work can be perceived, reproduced, or otherwise communicated." The Court finds that Olem Shoe's argument on this point is legally inadequate to overcome the statutory presumption of compliance with requisite formalities, which inhere in both Ditsy Dots and Zebra Supreme as a result of their registration.

Olem Shoe also argues that the boots in the photographs deposited as copies vary from the Washington Shoe boots currently sold and, hence, are not proper copies. The Court is unable

---

[20] As indicated above, the Court does not consider herein the new issues that Olem Shoe has raised with respect to Rose Zebra Supreme in its affirmative defenses filed on November 11, 2011 [D.E. #385].

to discern from the evidence that Olem Shoe cites [D.E. 268-8 and 268-9] the variances that Olem Shoe is purportedly identifying.  As such, Olem Shoe has not satisfied its burden to show the invalidity of Washington Shoe's copyrights.

Olem Shoe also argues that Washington Shoe's Ditsy Dots registration impermissibly reconstructed this work by submitting photographs of the Ditsy Dots boots to the Register in 2009.  It is undisputed, however, that the Register lost the original photographs deposited as copies with the Ditsy Dots registration and requested new copies from Washington Shoe.  This situation is entirely distinguishable from the factual circumstances of the cases relied upon by Olem Shoe.  These cases involve copyright holders who did not memorialize and register their original work and later attempted to use a copy of the work recreated from memory, instead of the original, to obtain copyright registration.   Under these circumstances, courts have held invalid copyright registrations that did not deposit copies of the original work.  *See e.g., Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209 (9th Cir. 1998) (finding that drawings made without reference to the original but, rather, based on the artist's memory, are not proper copies for purposes of obtaining a valid certificate of copyright registration); *Coles v. Wonder*, 283 F.3d 798 (6th Cir. 2002) (finding that a later recording of a song produced solely from the artist's memory was not a valid copy of the work for purposes of the copyright in the original song). The instant factual situation is entirely different.  Therefore, the Court finds that Olem Shoe's argument about the improper reconstruction of the Ditsy Dots design does not affect Washington Shoe's ability to proceed on its Ditsy Dots copyright registration in this action.

### c)  Ditsy Dots as a Work Made For Hire

Finally, with respect to Ditsy Dots only, Olem Shoe argues that Washington Shoe is not the author of Ditsy Dots as a "work made for hire" because the individual who Washington Shoe originally named as the author of Ditsy Dots, Jessica Stetson, was not employed by Washington Shoe at the time of the design's creation.  Alternatively, Olem Shoe argues that Ditsy Dots is not a "work made for hire" because Diane Bennett, who Washington Shoe later named as the true author of Ditsy Dots, did not state that she authored the design within the scope of her employment at Washington Shoe. D.E. #290. The Court rejects both arguments.   Under the Copyright Act, a "work made for hire" is, *inter alia*, "a work prepared by an employee within the scope of his or her employment."  17 U.S.C. § 101.  The Copyright Act further instructs that "the

employer or other person for whom the work was prepared is considered the author for purposes of this title." 17 U.S.C. § 201(b). While Washington Shoe's Art Director, Roel Salonga, had stated in an affidavit that Stetson, as a Washington Shoe employee, began the creation of the Ditsy Dots design in 2005 and finished the design in or around May 2005 (D.E. #79), Salonga, in a later affidavit, retracted this statement. D.E. #165. In addition, Washington Shoe corrected the record by submitting affidavits from Stetson and another former Washington Shoe employee, Diane Bennett, indicating that Salonga had been mistaken.[21] Ms. Bennett's affidavit states that she created the Ditsy Dots design while she was employed at Washington Shoe. D.E. #166. Ms. Stetson's affidavit supports this premise. D.E. #143-1. She states that she created hundreds of designs while at Washington Shoe and cannot always recall each design off the top of her head. *Id.* She also states that she was confident that the Ditsy Dots design was created at Washington Shoe. *Id.* Since Olem Shoe provides no evidence to rebut the evidence provided by Washington Shoe that Ms. Bennett and not Ms. Stetson was the author of Ditsy Dots, there is no genuine dispute of material fact on the issue of authorship. Moreover, since Diane Bennett was employed by Washington Shoe as a designer, it is self-evident that her creation of the Ditsy Dots design while employed by Washington Shoe was within the scope of her employment for purposes of the "work made for hire" doctrine.

Accordingly, with respect to the first prong of the copyright infringement analysis, Washington Shoe's copyrights for Ditsy Dots, Zebra Supreme and Rose Zebra Supreme are validly owned except to the extent that Olem Shoe asserts that Rose Zebra Supreme is invalid for the reasons set forth in Olem Shoe's new affirmative defenses, which this Court has not yet addressed.

### 2.   Copying of Constituent Elements of the Work that are Original

With respect to the second prong of the copyright infringement analysis, both Washington Shoe and Olem Shoe move for summary judgment. Washington Shoe must prove Olem Shoe copied constituent elements of the works that are original. *See Baby Buddies,* 611 F.3d at1315 (11th Cir. 2010). Since direct evidence of copying is rare, Washington Shoe can

---

[21] In an order dated April 29, 2011, the Court, based on its ruling at a hearing that same day, struck portions of both Stetson's and Bennett's affidavits. Naturally the Court does not consider the stricken portions of these affidavits in ruling upon summary judgment. D.E. #314.

come forward with indirect evidence of copying in one of two ways.  *Id.* Washington Shoe can show that Olem Shoe had access to its copyrighted works and that Olem Shoe's works are "substantially similar" to the copyrighted works.  *Leigh v. Warner Bros. Inc.*, 212 F.3d 1210, 1214 (11th Cir. 2000).  Or, if Washington Shoe cannot establish access, it can establish copying by showing that its copyrighted works and the alleged infringing works are "strikingly similar." *Corwin v. Walt Disney Co.*, 475 F.3d 1239, 1253 (11th Cir. 2007).  If Washington Shoe makes either showing, the burden shifts to Olem Shoe to prove that its works were not copies, but independent creations (*see Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1249 (11th Cir. 1999)) or copied from a common source (*see Calhoun v. Lillenas Publishing*, 298 F.3d 1228, 1233 (11th Cir. 2002) (quoting *Selle v. Gibb*, 741 F.2d 896, 901 (7th Cir. 1984) ("two works may be identical in every detail, but, if . . .  both works were copied from a common source in the public domain, then there is no infringement")).  To prove non-infringement, on the other hand, Olem Shoe must show that the similarities between the works concern only non-copyrightable elements of Washington Shoe's works, or that no reasonable jury, properly instructed, could find that the works are substantially similar.  *See Oravec*, 527 F.3d 1218 (11th Cir. 2008).

Since Washington Shoe has not set forth direct evidence of copying, the Court considers whether Washington Shoe has established access and substantial similarity with respect to each of Ditsy Dots, Zebra Supreme and Rose Zebra Supreme and whether Olem Shoe has rebutted access and established non-substantial similarity or proven independent creation or the existence of a common source.  Since the works concern copyrightable elements, as described below, the Court does not consider further whether the similarities between the works only concern non-copyrightable elements.

### a)  Access

Access is defined as a "reasonable opportunity" to view the work in question.  *Corwin v. Walt Disney Co*., 475 F.3d 1239, 1253 (11th Cir. 2007).  "A plaintiff may prove access by demonstrating either that the infringed work has been widely disseminated so that it is reasonable to infer that the defendant heard or saw the infringed work, or that it is reasonable to infer from a particular chain of events that the defendant gained access to the copyrighted work." *Lassin v. Island Def Jam Music Group*, 04-22320-CIV-HUCK, 2005 U.S. Dist LEXIS 43862, at * 15–16 (S.D. Fla. August 8, 2005) (citing *ABKCO Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988,

998 (2d Cir. 1983); *see also Dream Custom Homes, Inc. v. Modern Day Constr., Inc.,* 773 F. Supp. 2d 1288, 1302 (M.D. Fla. 2011) ("Access may be inferred by . . . evidence that the work was widely disseminated"). The 11th Circuit has said that "[r]easonable opportunity does not encompass any bare possibility in the sense that anything is possible . . . . Access may not be inferred through mere speculation or conjecture. . . . There must be a reasonable possibility of viewing plaintiff's work--not a bare possibility." *Herzog v. Castle Rock Entertainment*, 193 F.3d 1241, 1250 (11th Cir. 1999) (internal citations omitted). The "plaintiff bears the burden of presenting significant, affirmative and probative evidence to support the claim of access." *Lassin, 2005 U.S. Dist LEXIS* 43862 at * 16.

In support of access, Washington Shoe argues that access can be inferred based on the widespread distribution of Zebra Supreme and Ditsy Dots to wholesalers and retailers and their display at trade shows attended by Olem Shoe. Washington Shoe offers the testimony of its president and owner that Ditsy Dots boots "were first sold in 2007 and displayed at major trade shows including the World Shoe + Accessories Show  . . . held in Las Vegas." Decl. of R. Moehring, D.E. # 250-5 at ¶ 5. In addition, Moehring testifies that "Ditsy Dots and Zebra Supreme have been a huge commercial success, selling at national retailers such as Target stores" and Zebra Supreme boots have been available in Target stores "for years." *Id.* Washington Shoe's Statement of Undisputed Material Facts (D.E. #250-2) includes a screenshot from Google maps showing over one hundred Target locations in Florida. Washington Shoe also points to the record statements of Olem Shoe's Operations General Manager, Julio Acosta, *see* Decl. of Julio Acosta, D.E. # 59. Acosta testifies that as an Olem Shoe representative he attended the above-referenced Las Vegas trade show in February and August of 2007 and in subsequent years but that the Olem Shoe booth and Washington Shoe booth were in different hotels "several miles away." D.E. # 59 at ¶ 23. He also testifies that he did not know of Washington Shoe's existence in 2007 or in subsequent years prior to this dispute. Finally, he testifies that no one in the company knew about Washington Shoe's Target sales. Shahin Rezaie, Olem Shoe's Director of Purchasing, similarly declared in a sworn statement that he attended several such trade shows in Las Vegas and was not aware of Washington Shoe's existence prior

to this dispute.  D.E. # 249-1 at ¶ 2, 4.  Olem Shoe does not set forth any other facts disputing access beyond these statements.[22]

While the parties have not directed the Court to any 11th Circuit cases equating widespread distribution with access nor has the Court identified any such cases, two district courts in Florida have taken the view that access may be inferred from wide dissemination.  *See Dream Custom Homes, Inc. v. Modern Day Constr., Inc.,* 773 F. Supp. 2d at 1302 and *Lassin, 2005 U.S. Dist LEXIS* 43862 at * 16.  Other courts have also taken this view.  *See Moyna, LLC v. Victoria's Secret Direct New York, LLC,* 2003 WL 21983032 (S.D.N.Y. Aug. 19, 2003) and ABKCO *Music, Inc. v. Harrisongs Music, Ltd.*, 722 F.2d 988, 998 (2d Cir. 1983).  In *Moyna,* access was established by virtue of wide dissemination where copyrighted handbags were widely disseminated and available at a New York accessories show and placed in stores in New York, throughout the country and overseas.  *Moyna,* 2003 WL 21983032 at * 5.  It was held that Plaintiff need not prove that defendant physically possessed the copyrighted work because wide dissemination established access.  *Id.*  Given that Ditsy Dots and Zebra Supreme boots were sold nationwide at stores such as Target and could have been viewed at trade shows that both companies attended, Washington Shoe has shown that Olem Shoe employees had a reasonable opportunity to view the boots, whether or not they actually viewed them.  Such evidence of wide dissemination is significant, affirmative and probative evidence and represents a reasonable, and not just a bare, possibility that the work was observed.  The authorities that Olem Shoe relies upon to dispute access are distinguishable because they do not involve cases of wide dissemination.  *See Burgin v. Lahaye*, 2010 WL 3817709, at *1 (11th Cir. 2010) (no suggestion of wide dissemination where final manuscript merely submitted to a writing competition); *Lassin, 2005 U.S. Dist LEXIS* 43862 at * 17 (no wide dissemination where song merely aired on pirate radio stations in South Florida that were not FCC licensed and there was a limited distribution of compact discs to record industry personnel).  Accordingly, the Court finds as a matter of law that Olem Shoe had "access" to Washington Shoe's designs.

---

[22] In support of its argument that it did not have access to Washington Shoe's works, Olem Shoe refers to its "independent creation" argument, stating that it discussed with and received a sample of a polka dot and zebra skin designs from Chinese suppliers independently.  This is not an argument regarding "access," which requires only a reasonable opportunity to view.  We discuss independent creation separately herein.

*b) Substantial Similarity*[23]

"To determine whether an allegedly infringing work is substantially similar to a copyrighted work, we ask whether an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work." *Baby Buddies, Inc. v. Toys "R" Us Inc.*, 611 F.3d 1308, 1315 (11th Cir. 2010). Olem Shoe states that it is Washington Shoe's "burden to show precisely which elements it contends are protected." D.E. # 254 at 8. While Olem Shoe misstates Washington Shoe's burden, it is true that when evaluating the substantial similarity between the two works, the Court must be careful to compare "only those elements of the copyrighted work that are actually subject to copyright protection—that is, the elements of original expression in the copyrighted work." *Baby Buddies, Inc.*, 611 F.3d at 1316. In this case, the protectable elements of Ditsy Dots and Zebra Supreme are limited only to the conceptually severable patterned designs on the face of the boots and not any utilitarian functions of the boots themselves. Instances where the patterns are distorted in the manufacturing process by stretching such pattern over the shape of the boot are not considered part of the patterned designs. In the below analysis, the Court only focuses on Washington Shoe's particular copyrighted polka-dot and zebra-skin patterns.[24]

In comparing undisputed photographs of Washington Shoe's Ditsy Dots design (D.E. 354, Exhs. 5-8) against Olem Shoe's dots design (D.E. 354, Exhs. 11-14, 27-34), we compare each design from the perspective of an average lay observer from four different angles: front view, back view, toe pointing left and toe pointing right. Two illustrative examples of the toe pointing left view are included directly below (D.E. #354, Exhs. 5 and 11):

---

[23] Washington Shoe urges the Court to find striking similarity, which requires a higher burden of proof than substantial similarity. While this Court believes that the patterned designs on the face of the boots are indeed strikingly similar, we need not reach this conclusion as a matter of law. Where access is established as a matter of law, as we find herein, a claimant need only prove the more lenient standard of substantial similarity.

[24] In conducting such analysis, the Court relies on the undisputed photographs on the record of the Ditsy Dots and Zebra Supreme boots as well as Olem Shoe's alleged copies taken in the presence of all counsel on June 23, 2011. D.E. #354.



Such comparisons, from any angle, clearly reveal three distinct patterns that are common to both company's boot designs. On the vertical plane, evenly spaced big dots and small dots alternate in a consistent pattern from top to bottom. On the horizontal plane, two rows of evenly spaced big dots alternate with two rows of evenly spaced small dots. The big and small dots in each set of such rows on the horizontal plane, however, also have an internal vertical pattern: the first dot in the second such row is placed in the middle of the first two dots in the first such row and so on and so forth. Last, on the diagonal plane, two big dots consistently alternate with two small dots. To the naked eye, it appears that Olem Shoe uses proportionately equivalent big dots and small dots that are the same as those used by Washington Shoe. While Olem Shoe's expert, Goldaper, identifies as differences "non-circular, elongated dots" towards the bottom of Olem Shoe's boots that do not appear in Washington Shoe's boots, she identifies these differences as "the result of manufacturing process." D.E. 252-1 at ¶ 13. Such distortions are not a part of the copyrighted pattern and therefore are not relevant to this analysis. Indeed, no features of Olem Shoe's dots pattern are recognizably distinguishable from Washington Shoe's Ditsy Dots pattern. Since Washington Shoe's copyright protects the particular ways in which its polka-dot pattern has been expressed, *see Baby Buddies, Inc.*, 611 F.3d at 1318, and since Olem Shoe's pattern uses the same particularized expression, this Court finds, as a matter of law, that an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work. Thus, we find that Washington Shoe has met its burden to show that the two designs are

substantially similar while Olem Shoe has not met its burden to show that the two designs are not substantially similar.[25]

In comparing undisputed photographs of Washington Shoe's Zebra Supreme design (D.E. #354, Exhs. 1-4 and 9-10) against Olem Shoe's Zebra design (D.E. #354, Exhs. 17-26), we similarly compare each design from the perspective of an average lay observer from four different angles:  front view, back view, toe pointing left and toe pointing right. Two illustrative examples of the toe pointing right view are included directly below (D.E. #354, Exhs. 4 and 16):



Such comparisons, from any angle, similarly reveal distinct patterns common to both company's boot designs.  From the toe pointing right view, both show a black triangular shape at the top of the boot resembling an arrowhead pointing left.  Moving vertically down the boot below the arrowhead, both show a series of alternating black and white wavy lines of different thicknesses.  Continuing to move down vertically, this series of lines leads into a wavy elliptical shape in the center of the boot.  Immediately below, there is another series of alternating black and white wavy lines of different thicknesses.  Immediately below these lines is a black diamond-shaped object enclosing another ellipse.  Immediately below the diamond shape, a final series of wavy lines follow vertically down until reaching the toe of the boot.  While the white

---

[25] The Court notes that there are infinite ways to express a polka-dot pattern.  Had Olem Shoe made any distinguishing variations to Washington Shoe's pattern, the Court would be prevented from finding substantial similarity. Olem Shoe, however, appears to use Washington Shoe's precise pattern.  The 2nd Circuit described this point as follows:  "had appellant simply used the idea presented by the photo, there would not have been infringing copying.  But here Koons used the identical expression of the idea that Rogers created . . . ".  *Rogers v. Koons*, 960 F.2d 301, 308 (2nd Cir. 1992).

space is replaced with gold and the number of lines is slightly different in some of the photographs, the distinguishing characteristics of the pattern such as the arrowhead, diamond and ellipse are distinct and common to each from the front and toe pointing right views.  From the other three views, other distinct patterns are also common to both designs while no distinct patterns appear in one but not the other.  Olem Shoe's expert, Goldaper, identifies the following as differences in the two patterns:  "thicker stripes" in the Olem Shoe pattern, a "different arrangement of stripes" in the Olem Shoe pattern and stripes "missing entirely" from the Olem Shoe pattern. D.E. 252-1 at ¶ 12. Nonetheless, she does not specifically identify where the stripes are thicker, what arrangements are different nor which stripes are missing.  To the extent any such differences exist, they do not appear to be differences in the pattern, but merely differences caused by the manufacturing process based on the size of the boot or where the pattern begins.  She also identifies the use of a solid black overlay strap on the Olem Shoe boot where Washington Shoe uses a zebra pattern and different buckles.  D.E. 252-1 at ¶ 12.  As discussed earlier, such differences in color or utilitarian function do not bear on the protected design.  Accordingly, this Court finds that an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work.  Thus, we find that Washington Shoe has met its burden to show, as a matter of law, that the two designs are substantially similar while Olem Shoe has not met its burden to show that the two designs are not substantially similar.

With respect to Rose Zebra Supreme, Washington Shoe argues that infringement of the derivative work, Zebra Supreme, is also necessarily an infringement of the parent work, Rose Zebra Supreme, because the right to prepare and authorize the preparation of derivative works is one of the six exclusive copyrights.  17 U.S.C. § 106(2).  Olem Shoe, on the other hand, argues that Rose Zebra Supreme cannot be considered infringed without a separate showing of the two elements of copyright infringement discussed above with respect to Rose Zebra Supreme:  a valid copyright and copying.  Olem Shoe relies on a different section of the Copyright Act for the proposition that "[t]he copyright in such [a derivative] work is independent of, and does not affect or enlarge the scope . . . of any copyright protection in the preexisting material" and "does not imply any exclusive right in the pre-existing material.").  *See* 17 U.S.C. § 103(b).

While the parties have not directed the Court to any 11th Circuit cases equating infringement of a derivative work to infringement of a parent work, the Court believes that Washington Shoe's reading of the statute is the more plausible interpretation.  *See Montgomery*

*v. Noga, 168 F.3d 1282*, 1294 (11th Cir. 1999) (By downloading derivative work "VPIC 4.3" and incorporating it as a utility on certain discs, the defendants infringed the plaintiff's registered copyright in the parent work "VPIC 2.9a"). The Copyright Act states that "[a]nyone who violates any of the exclusive rights of the copyright owner as provided by sections 106 through 118 . . . is an infringer of the copyright . . . .". 17 U.S.C. § 501(a). Since neither party disputes that Zebra Supreme is a derivative work of Rose Zebra Supreme, unless Olem Shoe prevails on its newly asserted defenses, it follows that the Court's finding that Olem Shoe copied the protectable elements of Zebra Supreme is also a finding that Olem Shoe improperly violated Washington Shoe's exclusive right to prepare works derived from Rose Zebra Supreme guaranteed by section 106(2). Olem Shoe's reliance on section 103(b) is therefore misplaced. Accordingly, we find that an infringement of the derivative work, Zebra Supreme, is also necessarily an infringement of the parent work, Rose Zebra Supreme if Rose Zebra Supreme is found to be valid. As discussed above, while the Court finds that the registration for Rose Zebra Supreme is presumed valid, Olem Shoe has raised new issues with respect to Rose Zebra Supreme's validity in its affirmative defenses filed on November 11, 2011 [D.E. #385] that the Court does not presently address.

For the reasons discussed above, Washington Shoe has sustained its burden to show, as a matter of law, both elements of copyright infringement with respect to Ditsy Dots and Zebra Supreme which raises a presumption of copying. *See, e.g.*, *Calhoun v. Lillenas Publishing*, 298 F.3d 1228, 1232 (11th Cir. 2002). To the extent Rose Zebra Supreme is found to be valid, the Court similarly finds that Rose Zebra Supreme is presumed to have been copied. The burden thus shifts to Olem Shoe to prove that its works were not copies, but rather were independent creations or had a common source.

### c) Independent Creation and Common Source

Olem Shoe has raised the issues of independent creation and common source to rebut a finding of copyright infringement. That is, with respect to independent creation, it argues that notwithstanding the similarities between the works, Olem Shoe created its polka dot and zebra-stripe designs independently from Washington Shoe's copyrighted designs. D.E. 254. Shahin Rezaie, the Director of Publication of Olem Shoe, testified that he independently sought out and received polka-dot and zebra-skin samples from an independent Chinese supplier that formed the

basis of Olem Shoe's polka-dot and zebra-skin designs.  D.E. 246-1, pp. 19-20.  In a sworn declaration, Julio Acosta, the General Manager of Olem Shoe, testified that when Olem Shoe received the samples from the Chinese supplier, "it was unaware of any copyright protection existing in such designs or boots, and believed the designs to be in the public domain and not subject to protection."   D.E. 251-1.  The Court notes that such evidence does not constitute independent creation, but merely creation from a separate source.  Olem Shoe provides no evidence that both Washington Shoe and Olem Shoe used the same common source.  *See Calhoun*, 298 F.3d at1233.  Moreover, Olem Shoe provides no evidence that such source was not a copyrighted Washington Shoe design, but rather only states a lack of knowledge with respect to the copyrighted nature of such sample.  *Cf.  Calhoun*, 298 F.3d 1228 (defendant stated in an affidavit that he independently created the song "Emmanuel" without the use of any pre-existing material as a basis for the song).  Olem Shoe has failed to provide evidence of independent creation or a common source and accordingly has failed, as a matter of law, to overcome the presumption of copying.

Therefore, summary judgment in favor of Washington Shoe and against Olem Shoe on the copyright infringement claims with respect to Ditsy Dots, Zebra Supreme and Rose Zebra Supreme is warranted, except to the extent that Olem Shoe asserts that Rose Zebra Supreme is invalid for the reasons set forth in Olem Shoe's new affirmative defenses.  As indicated in the Order dated November 30, 2011 [D.E. #395], the parties may supplement their motions for summary judgment with respect to the new issues raised in Olem Shoe's affirmative defenses, which  this Court has not yet addressed.


D. *Trade Dress Infringement and False Designation of Origin*

Washington Shoe next claims that Olem Shoe is liable for trade dress infringement and false designation of origin.  *See* §43(a) of the Lanham Act, 17 U.S.C. §1125(a).  Washington Shoe asks the Court to grant summary judgment in its favor for trade dress infringement of Washington Shoe's unregistered trade dresses for Zebra Supreme and Ditsy Dots.  "The term 'trade dress' refers to the appearance of a product when that appearance is used to identify the producer." *Dippin' Dots, Inc. v. Frosty Bites Distrib., LLC*, 369 F.3d 1197, 1202 (11th Cir. 2004).  "Trade dress involves the total image of a product and may include features such as size, shape, color, texture, graphics, or even particular sales techniques."  *Id.*  We have already noted that

Zebra Supreme and Ditsy Dots "are unquestionably examples of product design trade dress; it is the designs on the boots themselves, not their packaging, which are at issue." *Olem Shoe Corp. v. Washington Shoe Co.*, 2010 WL 3505100, (S.D. Fla. Sept. 3, 2010).[26]   In the case of a product design trade dress, *Wal-Mart Stores* held that a trade dress is protectable only on a showing of secondary meaning because designs are not inherently distinctive and will invariably serve purposes other than source identification. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 212-213 and 216.  Secondary meaning exists when "in the minds of the public, the primary significance of a [trade dress] is to identify the source of the product rather than the product itself." *Wal-Mart Stores, Inc.,* 529 U.S. at 211(quoting *Inwood Laboratories, Inc. v. Ives Laboratories, Inc.*, 456 U.S. 844, 851, n.11 (1982)).  Washington Shoe, as the producer of Zebra Supreme and Ditsy Dots, bears the burden of showing that its trade dresses have secondary meaning and are therefore distinctive.[27]  *Wal-Mart Stores, Inc.,* 529 U.S. at 210 ("Nothing in §43(a) explicitly requires a producer to show that its trade dress is distinctive, but courts have universally imposed that requirement.").  Indeed, in an analogous context, the Eleventh Circuit has held that "[p]laintiff has the burden of sustaining a high degree of proof in establishing a secondary meaning for a descriptive term*." Investacorp Inc. v. Arabian Investment Banking Corporation (Investcorp)*, 931 F.2d 1519, 1525 (11th Cir. 1991).  In addition, Washington Shoe bears the burden of showing that "the allegedly infringing feature is not 'functional,' *see* §43(a)(a)(3), and is likely to cause confusion with the product for which protection is sought, *see* §43(a)(1)(A), 15 U.S.C. § 1125(a)(1)(A)."  *Wal-Mart Stores, Inc.,* 529 U.S. at 210.  Since all

_____

[26] As a result, in this case, Washington Shoe's trade dress protection would only extend marginally beyond its copyright protection to other non-functional features of the boots not covered by the copyrights.

[27] Washington Shoe claims that it "has established an unrebutted presumption of secondary meaning," D.E. #273, by proving "exact copying," D.E. #250.   While this Court is competent to find substantial similarity as a matter of law by comparing the patterned designs of the two boots from the perspective of an average lay observer, we are not competent to find exact copying nor "striking similarity," which are questions of fact requiring expert testimony.  *See, e.g., Testa v. Janssen*, 492 F. Supp. 198, 203 (W.D. Penn. 1980) ("Expert testimony is not required to establish 'substantial similarity.' However, when a plaintiff seeks to . . . establish that two works are 'strikingly similar,' such testimony is required.").  Washington Shoe does not provide expert testimony on exact copying.  Moreover, the Eleventh Circuit has declined to adopt a rule whereby intentional copying would eliminate the need for proof of secondary meaning.  *Brooks Shoe Mfg. Co. v. Suave Shoe Corp.*, 716 F.2d 854, 859-860 (11th Cir. 1983).

three elements are necessary for a finding of trade dress infringement, any one could be characterized as a threshold.  *See Epic Metal Corp. v. Souliere*, 99 F.3d 1034, 1039 (11th Cir. 1996).

This Court has already found that the patterned designs on the face of the boots are not functional.  *See Olem Shoe Corp.*, 2010 WL 3505100 at *3.  Although this Court has already found substantial similarity in the copyright infringement context between the patterned designs, which would suggest a likelihood of confusion, Washington Shoe must prove secondary meaning in order to establish a likelihood of confusion in the trade dress infringement context. *Wal-Mart Stores, Inc.,* 529 U.S. at 210 ("without distinctiveness the trade dress would not 'cause confusion . . . as to the origin, sponsorship, or approval of [the] goods,' as the section requires."). In other words, if a member of the public would not identify Ditsy Dots or Zebra Supreme boots with Washington Shoe (or one of its brands), they would not be confused by even identical boots sold by another company.

As this Court has noted, "[a] plaintiff attempting to bring a claim for violation of an unregistered product design trade dress faces a difficult task."  *Habersham Plantation Corporation v. Investment Partnership, L.P.*, 2011 U.S. Dist. LEXIS 100726 at *21 (S.D. Fla. Sept. 8, 2011).  "Establishing secondary meaning is best accomplished by surveys or other quantitative evidence (internal citations omitted)."  *Id.*  "While survey evidence isn't required to prove secondary meaning, 'appeals courts have held that survey evidence 'is the most direct and persuasive evidence' to establish secondary meaning."  *Id.* quoting *Sugar Busters LLC v. Brennan*, 177 F.3d 258, 269 (5th Cir. 1999).

In the absence of consumer survey evidence, courts consider four factors to determine whether a particular trade dress has acquired a secondary meaning: (1) The length and manner of its use; (2) the nature and extent of advertising  and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the trade dress and the plaintiff's ... business; and (4) the extent to which the public actually identifies the trade dress with the plaintiff's products.  See *Investacorp*, 931 F.2d at 1525; *see also Knights Armament Co. v. Optical Sys. Tech., Inc.*, 654 F.3d 1179 (11th Cir. 2011).  The most important of these factors is the fourth which speaks directly to the effectiveness of the first three factors.  See *Habersham Plantation Corporation,* 2011 U.S. Dist. LEXIS 100726 at *25 ("courts have repeatedly pointed

out that 'the dispositive factor is not the extent of the promotional efforts, but their effectiveness.").

The Eleventh Circuit has held that the existence of secondary meaning is a question of fact.  *Coach House Restaurant, Inc. v. Coach and Six Restaurants*, 934 F.2d 1551, 1560 (11th Cir. 1991), citing *Aloe Creme Laboratories, Inc. v. Milsan, Inc.*, 423 F.2d 845, 849 (5th Cir.) ("A claim of secondary meaning presents a question of fact."), cert. denied, 398 U.S. 928, 90 S. Ct. 1818, 26 L. Ed. 2d 90, reh'g denied, 400 U.S. 856, 91 S. Ct. 23, 27 L. Ed. 2d 95 (1970). Accordingly, the Court must determine whether resolving the issue of secondary meaning in this case requires the resolution of a genuine factual dispute. *Investacorp*, 931 F.2d at 1524.

To establish secondary meaning, Washington Shoe relies almost exclusively on the affidavit of Karl Moehring, its Chief Financial Officer and owner.  Addressing the length and manner of the trade dress' use, Mr. Moehring states that Ditsy Dots was "first sold in 2007" and Zebra Supreme has been available "for years." D.E. 273-4, ¶7.  Addressing the nature and extent of advertising and promotion for Washington Shoe's trade dresses, he states, *inter alia*, that Washington Shoe spent "substantial amounts of money in advertising and marketing campaigns directed at the American public to familiarize them with Ditsy Dots and Zebra Supreme."  D.E. *Id.* ¶8.  Addressing the efforts made by Washington Shoe to promote a conscious connection in the public's mind between the trade dress and Washington Shoe's business, he states that there has been a "long history of marketing . . . Ditsy Dots . . . under the Western Chief Women® brand name. *Id.* ¶9.  As Olem Shoe points out, Mr. Moehring also states that Washington Shoe permits Target to sell the Ditsy Dot boots "under Target's Merona brand name," *id.* at ¶24, and that the Zebra Supreme boots have imprints identifying Target as the source.  D.E. #268-6. Olem Shoe argues that these actions are inconsistent with Washington Shoe's efforts to create a public association between the designs and Washington Shoe. Addressing the extent to which the public actually identifies the trade dress with the Washington Shoe's products, Mr. Moehring identifies two emails where retailers compliment Washington Shoe on the success of its "Western Chief Ditsy Dots" brand and, in one, customers ask for the boots by name.  *Id.* ¶22-23. Mr. Moehring did not address any association of Zebra Supreme with one of Washington Shoe's brands and noted that Washington Shoe sells Zebra Supreme only through Target.  *Id.* at ¶12.

Olem Shoe urges the Court to rule as a matter of law that Washington Shoe has failed in its evidentiary burden to establish secondary meaning and, therefore, that Washington Shoe's

trade dress claim fails.  Olem Shoe stresses that Washington Shoe has not conducted a consumer survey to demonstrate secondary meaning and that Mr. Moehring's testimony demonstrates that Washington Shoe took actions inconsistent with a protectable trade dress.[28] We agree with Olem Shoe that Washington Shoe has failed to meet its evidentiary burden.   Most significantly, Washington Shoe failed to produce meaningful and competent evidence to support the effectiveness of its promotional efforts.  Washington Shoe failed to provide survey or other quantitative evidence, s*ee Habersham Plantation Corporation,* 2011 U.S. Dist. LEXIS 100726 at *24.    Furthermore, Mr. Moehring's affidavit does not establish the "connection in the consumer's mind between [Washington Shoe] and its claimed trade dress" (internal citations omitted).  *Id.  See also Vital Pharms., Inc. v. Am. Body Bldg. Prods., LLC,* 511 F. Supp. 2d 1303, 1312 ("I cannot accept the testimony of only two individuals as sufficient evidence of secondary meaning.");  *Gulf Coast Commer. Corp. v. Gordon River Hotel Ass.,* 2006 U.S. Dist. LEXIS 30492 at *35 (holding that the "many" declarations submitted by plaintiff were insufficient to overcome plaintiff's high burden of proof of secondary meaning).   Rather, Mr. Moehring's testimony only identifies the emails of two retailers, as opposed to consumers, to establish the public's association of Ditsy Dots with Washington Shoe's brand. Putting aside the fact that the statements of such consumers as conveyed by the retailers are inadmissible hearsay, there is no evidence as to the context of the statements nor how many consumers made such statements. That Washington Shoe does not have more convincing evidence to show actual identification is the best evidence of its absence.   With respect to Zebra Supreme, he presented no associative evidence.  Even considered in the light most favorable to Washington Shoe, such evidence is not legally sufficient to establish that the public actually identifies the Zebra Supreme and Ditsy Dots trade dresses with Washington Shoe (or its brands).  Without such evidence establishing actual identification, no properly instructed jury could find secondary meaning.  Since a finding of secondary meaning is an essential element to Washington Shoe's trade dress infringement claim and Washington Shoe has failed to meet its high burden of proof, summary judgment in favor of Olem Shoe and against Washington Shoe on this issue is warranted.[29]

---

[28] Olem Shoe also claims that Mr. Moehrings testimony and exhibits constitute inadmissible hearsay, and unsupported, self-serving statements.  D.E. #290.

[29] Washington Shoe alternatively urges the Court to find trade dress infringement on the basis of "secondary meaning in the making."  We decline to address this theory because there is no

### E.  Willful Copyright and Trade Dress Infringement

Washington Shoe next claims that summary judgment that Olem Shoe willfully infringed Washington Shoe's copyrights and trade dress rights is appropriate because Olem Shoe received cease and desist letters making them aware that its continued sale, shipping and distribution of the infringing designs constituted copyright and trade dress infringement.  D.E. #250.  The parties do not cite to any Eleventh Circuit cases nor has the Court identified any such cases establishing the standard for willfulness in copyright and trade dress infringement cases.  Some courts have applied the following rule which the Court adopts:  "whether the defendant had knowledge that [its] conduct represented infringement or perhaps recklessly disregarded the possibility."  See *Kepner-Tregoe, Inc. v. Vroom*, 186 F.3d 283, 288 (2d Cir.1999) (copyrights); *Koon Chun Hing Kee Soy & Sauce Factory, Ltd. v. Star Mark Management, Inc.,* 2007 WL 74304 at *11 (E.D.N.Y. Jan. 8, 2007) (Lanham Act/Trademarks).

While caution must be exercised in granting summary judgment when state of mind is an issue, the summary judgment rule "would be rendered sterile" if the mere existence of an issue as to state of mind would automatically defeat an otherwise valid motion. *Nora Beverages, Inc. v. Perrier Group of America, Inc.,* 269 F.3d 114, 125 (2d Cir.2001). Where the defendant offers no probative evidence raising a genuine issue of material fact regarding willfulness, summary judgment is appropriate. *See Fendi Adele S.R.L. v. Burlington Coat Factory Warehouse Corp.*, 689 F. Supp. 2d 585, 600-601 (S.D.N.Y. 2010), amended on reconsideration, (Mar. 23, 2010) (internal citations omitted).

Here, Washington Shoe effectively argues that knowledge of alleged infringement in a cease and desist letter constitutes knowledge of infringement. However, the cases it relies on in support of this notion are distinguishable from this case.   In each, defendant's knowledge of

---

precedent for it in the Eleventh Circuit and each of  the Federal Circuit and 8th Circuit has rejected it.  *See Cicena Ltd. and Cicena Inc. v. Columbia Telecommunications Group, 900 F.2d 1546 (Fed. Cir. 1990);Black & Decker Mfg. Co. v. Ever-Ready Appliance Mfg. Co.*, 684 F.2d 546 (8th Cir. 1982)  To our knowledge, only the New York district courts have endorsed it and the Federal Circuit opined that "the Second Circuit, if faced with the question, would reject the doctrine of secondary meaning in the making."  *Cicena Ltd. and Cicena Inc , 900 F.2d at 1550.* In any event, there is insufficient evidence in this case that the process of acquiring secondary meaning is ongoing.

infringement, whether or not informed by a cease and desist letter, was supported by compelling evidence to suggest that such defendant could not reasonably and in good faith have believed that there was no infringement. *See Columbia Pictures Television v. Krypton Broadcasting of Birmingham, Inc.*, 106 F.3d 284, 293 (9th Cir. 1997), *rev'd on other grounds by Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998) (defendant continued to broadcast copyrighted television shows in spite of knowledge that the license agreement permitting defendant to do so had been terminated); *Dolman v. Agee*, 157 F.3d 708, 711 (9th Cir. 1998) (defendant continued to produce and market copyrighted records in spite of knowledge that ownership of the copyright was unclear and its permission may not have been authorized); *N.A.S. Import, Corp. v. Chenson Enterprises, Inc.,* 968 F.2d 250, 252-253 (2nd Cir. 1992) (defendant continued to sell copyrighted handbags in spite of knowledge that its attorney had sent a letter that defendant would cease and desist from doing so); *Getaped.Com, Inc. v. Cangemi*, 188 F. Supp. 2d 398, 402-403 (S.D.N.Y. 2002) (defendant copied source code in spite of a prominent copyright notice); *Castle Rock Entertainment v. Carol Pub. Group, Inc.,* 955 F. Supp. 260, 267 (S.D.N.Y. 1997) (defendant continued to publish and distribute a Seinfeld Aptitude Test in spite of a prominent copyright notice); *Microsoft Corp. v. Atek 3000 Computer, Inc.*, 2008 WL 2884761 (E.D.N.Y. 2008) (defendant, through default, admitted allegations of infringement and default supported a finding of willfulness); *Canon U.S.A. Inc. v. Tiger Wholesale*, 32 U.S.P.Q.2d (BNA) 1698 (defendant had actual knowledge that the "Canomatic" cameras it was selling infringed upon Canon's trademark); *Rolls-Royce PLC v. Rolls-Royce USA, Inc.*, 688 F. Supp. 2d 150 (E.D.N.Y. 2010) (defendant had actual knowledge that the "Roll-Royce USA" trademark it was using infringed upon Rolls-Royce PLC's trademark); *Fendi Adele S.R.L.,* 689 F. Supp. 2d 585, 600-601 (S.D.N.Y 2010), amended on reconsideration, (Mar. 23, 2010) (defendant had actual knowledge it was violating an injunction against sale of counterfeits).     In the instant case, by contrast, there was evidence suggesting that Olem Shoe could reasonably and in good faith have believed that there was no infringement. First, the cease and desist letters neglected to include important information relating to the validity of the copyrights.  As described in the background section, this included failures to provide copies of the deposits of the allegedly infringed works and identifying information for the copyright registration.  In fact, problems with the registrations led Washington Shoe to need supplementary registrations. That such supplementary registrations were necessary is proof that Olem Shoe's dispute over the

allegations in the cease and desist letters was reasonable and in good faith in spite of the ultimate outcome.[30]   Moreover, Olem Shoe canceled shipments and stopped selling the designs on the force of Washington Shoe's assertions in the abundance of caution.  *See* D.E. #59 ¶9 and 18. In addition, Olem Shoe employees stated that they did not see any copyright notices on the samples from which they produced the infringing designs.  (D.E. #249-1). Professor Nimmer has stated that "one who has been notified that his conduct constitutes copyright infringement, but who reasonably and in good faith believes the contrary, is not 'willful' for these purposes." RCA/*Ariola International, Inc. v. Thomas & Grayston Co.*, 845 F.2d 773 (8th Cir. 1988) (quoting M. Nimmer and D. Nimmer, Nimmer on Copyright § 14.04[B][3] (1987)).  Since the cease and desist letters do not offer probative evidence raising a genuine issue of material fact that Olem Shoe knew that its conduct constituted copyright infringement or recklessly disregarded the possibly, the Court finds that summary judgment in favor of Olem Shoe on this issue is appropriate.

F.  *Unfair Competition*

In Count III of its Amended Counterclaim, Washington Shoe alleges that Olem Shoe's "actions in violation of the trademark and copyrights statutes are violations of Florida's and Washington's Deceptive and Unfair Trade Practices Act(s)." D.E. # 234.   Washington Shoe incorporates by reference the paragraphs in its complaint supporting copyright and trade dress infringement and alleges further that such "actions were unfair and deceptive in violation of the state laws noted above and under the common law." *Id.*

Olem Shoe asks that this claim be dismissed with prejudice.  Insofar as the claim is predicated on trade dress infringement, Olem Shoe asks that the claim be dismissed for the same reasons that the trade dress infringement claim itself fails.  Insofar as the claim is predicated on copyright infringement, Olem Shoe asks that the Court find that such claims are pre-empted by the Copyright Act.  *See* 17 U.S.C. 301 (". . . all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by Section 106 in works

---

[30] While Washington Shoe also cites sales data revealing "willful sales" that it was only able to obtain through subpoena duces tecums, any such sales would not alter the outcome of this analysis where Olem Shoe reasonably and in good faith believed its actions did not constitute infringement.

of authorship that are fixed in a tangible medium of expression and come within the subject matter of copyright as specified by section 102 and 103 . . . are governed exclusively by this title.").

Since we have already found in favor of Olem Shoe on the issue of trade dress infringement, the alleged actions in violation of the trademark statutes cannot be a predicate for a finding of state law unfair competition.

On the issue of preemption, the Eleventh Circuit has explained that a state law cause of action is preempted by the Copyright Act if two elements are present. First, "[t]he court must determine 'whether the rights at issue fall within the 'subject matter of copyright' set forth in sections 102 and 103. *Donald Frederick Evans & Assocs., Inc. v. Continental Homes, Inc.*, 785 F.2d 897, 914 (11th Cir. 1986) (internal citations omitted). Second, "whether the rights at issue are 'equivalent to' the exclusive rights of section 106." *Id.*

In this case, the first prong is clearly satisfied because the registered copyrights for the two patterned designs on the face of Washington Shoe boots form the basis of the rights at issue in this matter. These designs are clearly within the subject matter of copyright set forth in sections 102 and 103.

The second prong, that such rights must be equivalent to the exclusive rights of Section 106, is also satisfied. The protection that Washington Shoe seeks with respect to its copyrighted patterned designs, derives directly from three of the exclusive rights that Washington Shoe has under Section 106: the right "to reproduce the copyrighted work in copies" (and thereby exclude others from doing so), the right "to prepare derivative works based upon the copyrighted work" (and thereby exclude others from doing so) and the right "to distribute copies . . . of the copyrighted work to the public by sale or other transfer of ownership" (and thereby exclude others from doing so). 17 U.S.C. 106. By contrast, in *Donald Frederick Evans & Associates*, the case Washington Shoe relies on, the unfair competition claims involved allegations of misrepresentations about Evans' model homes which did not fall within the subject matter of copyright. *See Donald Frederick Evans & Associates,* 785 F.2d at 914. This is not the case here. Courts have found that complaints predicating unfair competition claims on copyright violations are preempted by the Copyright Act. *See, e.g., Kodadek v. MTV Networks, Inc.*, 152 F.3d 1209, 1212-1213 (9th Cir. 1998) ("Kodadek's complaint expressly bases his unfair competition claim on rights granted by the Copyright Act . . . Kodadek's unfair competition

claim is preempted").  Since Washington Shoe's complaint expressly bases its state law unfair competition claims on actions in violation of the copyrights statutes (except to the extent they are based on the trademark statutes as discussed above), Washington Shoe's claim is equivalent to the three exclusive rights noted above that are protected by the federal copyright laws.   While both Florida's and Washington's unfair competition laws[31] are significantly broader than the Copyright Act and are not themselves pre-empted, Washington Shoe's specific claims in this case are preempted.

Accordingly, we grant summary judgment in favor of Olem Shoe and against Washington Shoe on the issue of unfair competition.

### III. Conclusion

For all of the foregoing reasons, the Court takes the following actions herein:

(1)      GRANTS summary judgment in favor of Washington Shoe and DENIES summary judgment with respect to Olem Shoe on the copyright infringement claims addressed herein, except with respect to the new invalidity issues asserted against the Rose Zebra Supreme copyright in Olem Shoe's affirmative defenses filed on November 11, 2011 [D.E. #385];

(2)      DENIES summary judgment with respect to Washington Shoe and GRANTS summary judgment in favor of Olem Shoe on the trade dress infringement and false designation of origin claims addressed herein;

(3)      DENIES summary judgment with respect to Washington Shoe and GRANTS summary judgment in favor of Olem Shoe on the "willful" copyright and trade dress infringement claims addressed herein; and

(4)      DENIES summary judgment with respect to Washington Shoe and GRANTS summary judgment in favor of Olem Shoe on the unfair competition claims addressed herein.

---

[31] Unfair competition law in Florida prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Fla. Stat. § 501.204.  Unfair competition law in Washington similarly prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  Rev. Code Wash. (ARCW) § 19.86.020

Having resolved the liability issues, except for the new invalidity issues asserted against the Rose Zebra Supreme copyright in Olem Shoe's affirmative defenses filed on November 11, 2011 [D.E. #385], the case will proceed to trial only on those new invalidity issues and the issue of damages.

DONE in Chambers, Miami, Florida this 1st day of December, 2011.

Paul C. Huck
United States District Judge

Copies furnished to:
Counsel of Record

42