UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-23494-CIV-HUCK/O'SULLIVAN

OLEM SHOE CORP.,
a Florida corporation,

      Plaintiff/Counter-Defendant,

v.

WASHINGTON SHOE CO.,
a Washington corporation,

      Defendant/Counter-Plaintiff.

_____/

## ORDER DENYING OLEM SHOE CORP.'S MOTION FOR RELIEF FROM JUDGMENT AND MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 56(H) & THE COURT'S INHERENT POWER (DE# 525, 10/30/12)

THIS MATTER is before the Court on Olem Shoe Corp.'s Motion for Relief from Judgment and Motion for Sanctions Pursuant to Fed. R. Civ. P. 56(h) & the Court's Inherent Power (DE# 525, 10/30/12). Olem Shoe Corporation (hereinafter "Olem Shoe") filed the instant action on November 16, 2009. Washington Shoe Company (hereinafter "Washington Shoe") filed counterclaims against Olem Shoe and the Court granted summary judgment on some of the parties' claims including Washington Shoe's copyright infringement counterclaim for the Zebra Supreme boots.[1] The Court held a jury trial on damages and both parties appealed to the United States Court of Appeals for the Eleventh Circuit following the Court's entry of the Corrected Final Judgment on a Jury Verdict (DE# 448, 2/1/12). This appeal remains pending before the Eleventh

---

[1] This matter relates only to the Zebra Supreme boots for which Washington Shoe was awarded $6,334.34 at trial. See Verdict (DE# 442, 1/18/12).

Circuit.

On October 30, 2012, Olem Shoe filed the instant motion. The Court referred the motion to the magistrate judge for a report and recommendation. <u>See</u> Order of Reference to Magistrate Judge (DE# 537, 12/5/12). On July 8, 2013, Magistrate Judge O'Sullivan held a hearing and entered his Report and Recommendation (DE# 570, 8/5/13) on August 5, 2013. Magistrate Judge O'Sullivan recommended, in part, that the Court review its summary judgment ruling to determine whether the record supports a finding of wide dissemination and/or striking similarity between the Zebra Supreme boots and Olem Shoe's zebra pattern boots as a matter of law. <u>Id.</u> at 1. Olem Shoe filed objections to the Report and Recommendation and Washington Shoe filed a response. <u>See</u> Plaintiff Olem Shoe Corporation's Objections to the Report and Recommendation [D.E. 570] (DE# 572, 8/19/13); Defendant Washington Shoe's Response to Plaintiff Olem's Objections to the Report and Recommendation (DE# 573, 9/3/13). The Court has independently reviewed the motion, the parties' respective memoranda of law, the Report and Recommendation, the objections, the response, the pertinent portions of the record and is otherwise duly advised in the premises.

As indicated below, the Court determines that the record still supports the Court's earlier finding of wide dissemination and a further finding of striking similarity between the subject boots. Accordingly, Olem Shoe Corp.'s Motion for Relief from Judgment and Motion for Sanctions Pursuant to Fed. R. Civ. P. 56(h) & the Court's Inherent Power (DE# 525, 10/30/12) is **DENIED**.

2

## BACKGROUND

The instant action involves a dispute over the copyrights of three designs: Ditsy Dots, Zebra Supreme and Rose Zebra Supreme. The parties filed cross-motions for summary judgment. See Motion for Summary Judgment (DE# 250, 3/7/11); Plaintiff/Counter-Defendant Olem Shoe Corp.'s Motion for Summary Judgment and Memorandum of Law in Support Thereof (DE# 254, 3/7/11). Washington Shoe also filed the affidavits of Karl Moehring, the Chief Financial Officer and owner of Washington Shoe, and Robert M. Moehring, the president and owner of Washington Shoe, in support of its summary judgment motion. See Affidavit of Karl Moehring (DE# 250-3, 3/7/11); Declaration of Robert M. Moehring (DE# 250-5 at 16-19, 3/7/11). Paragraph 1 of Karl Moehring's affidavit states that: "The Ditsy Dots and Zebra Supreme boots have been a huge commercial success, selling at national retailers such as Target® stores." See Affidavit of Karl Moehring (DE# 250-3 at ¶1, 3/7/11). Robert M. Moehring's declaration contains an identical statement in paragraph 4. See Declaration of Robert M. Moehring (DE# 250-5 at ¶4, 3/7/11). Paragraph 2 of Karl Moehring's affidavit states, in part, that: "The Zebra Supreme boots have been available across the country **by Target® for years**." Affidavit of Karl Moehring (DE# 250-3 at ¶2, 3/7/11) (emphasis added). Robert M. Moehring's declaration contains a similar, but not identical statement: "The Zebra Supreme boots have been available across the country **in Target® stores for years**." See Declaration of Robert M. Moehring (DE# 250-5 at ¶5, 3/7/11) (emphasis added).

On December 1, 2011, the Court issued its Order on the parties' cross-motions for summary judgment. See Order on Cross-Motions for Summary Judgment (DE# 396,

12/1/11). In this Order, the Court noted the following:

> In support of access, Washington Shoe argues that access can be inferred based on the widespread distribution of Zebra Supreme and Ditsy Dots to wholesalers and retailers and their display at trade shows attended by Olem Shoe. Washington Shoe offers the testimony of its president and owner that Ditsy Dots boots "were first sold in 2007 and displayed at major trade shows including the World Shoe + Accessories Show . . . held in Las Vegas." Decl. of R. Moehring, D.E. # 250-5 at ¶ 5. In addition, Moehring testifies that "Ditsy Dots and Zebra Supreme have been a huge commercial success, selling at national retailers such as Target stores" and Zebra Supreme boots have been available in Target stores "for years." Id. Washington Shoe's Statement of Undisputed Material Facts (D.E. #250-2) includes a screenshot from Google maps showing over one hundred Target locations in Florida.[2]

Id. at 25 (footnote added). The Court further stated that:

> Given that Ditsy Dots and Zebra Supreme boots were sold nationwide at stores such as Target and could have been viewed at trade shows that both companies attended, Washington Shoe has shown that Olem Shoe employees had a reasonable opportunity to view the boots, whether or not they actually viewed them. Such evidence of wide dissemination is significant, affirmative and probative evidence and represents a reasonable, and not just a bare, possibility that the work was observed.

Id. at 26.

The Court granted summary judgment in favor of Washington Shoe on its copyright infringement claims with respect to the Ditsy Dots and Zebra Supreme copyrights. See Order on Cross-Motions for Summary Judgment (DE# 396 at 31, 12/1/11). The Court granted summary judgment in favor of Olem Shoe on Washington Shoe's trade dress infringement and false designation of origin claim, its willful copyright and trade dress infringement claim and its unfair competition claims under

---

[2] The Court assumes this included displays at "brick-and-mortar stores" as well as other means of access, e.g., internet and trade show. But as will be explained below, the availability of the Zebra Supreme boots exclusively through the Target.com website does not change the outcome of the Court's summary judgment ruling.

4

Florida's and Washington's deceptive and unfair trade practices acts. Id. at 36, 39, 41. The Court reserved ruling on certain issues related to the Rose Zebra Supreme design and allowed the parties to "supplement their motions for summary judgment with respect to the new issues raised in Olem Shoe's affirmative defenses . . . ." Id. at 15 n.12. On January 5, 2012, the Court issued a second Order granting summary judgment in favor of Washington Shoe on its trademark infringement claim with respect to the Rose Zebra Supreme copyright. See Order on Supplemental Cross-Motions for Summary Judgment (DE# 417, 1/5/12). The Court further found that for purposes of statutory damages, the Rose Zebra Supreme and the Zebra Supreme designs should be treated as one work. "Thus, to the extent statutory damages are elected by Washington Shoe and found with respect to an infringement of Zebra Supreme, no additional damages will be independently attributed to an infringement of Rose Zebra Supreme for the sale by Olem Shoe of boots using the Zebra Supreme design." Id. at 7.

After disposing of all the liability issues, the Court proceeded to hold a jury trial only on damages. At trial, Karl Moehring testified that the Zebra Supreme boots were sold exclusively through Target.com. See Transcript (DE# 512 at 48, 4/19/12). The following exchange also took place at trial between Olem Shoe's counsel and Karl Moehring:

> Q. Let's talk about the Zebra pattern for a second. Okay. You'll agree with me that Washington Shoe began to sell the Zebra pattern, the one that was sold to target.com, beginning September 28th, 2009; is that correct?
>
> A. Do you know which one that's numbered?
>
> Q. It's not there. I'm just asking you a question.
>
> A. I would have to reference. I don't know exactly.

Q. Let me show you a document that was produced in discovery by your company as WSC 0088.

**A. And you wanted the first sale?**

**Q. Yes.**

**A. September 28th, 2009.**

See Transcript (DE# 512 at 204, 4/19/12) (emphasis added).

On January 18, 2012, the jury returned a verdict in favor of the Washington Shoe and against Olem Shoe in the amount of $27,395.40 ($6,334.34 in damages for the infringement of the Zebra Supreme boot design and $21,061.06 in damages for the infringement of the Ditsy Dot boot design). See Verdict (DE# 442, 1/18/12). On February 1, 2012, the Court entered a corrected final judgment in accordance with the jury's verdict. See Corrected Final Judgment on a Jury Verdict (DE# 448, 2/1/12). On March 1, 2012, Washington Shoe filed a notice of appeal. See Washington Shoe Company's Notice of Appeal (DE# 452, 3/1/12). Olem Shoe filed a notice of cross-appeal on March 8, 2012. See Olem Shoe Corp.'s Notice of Cross-Appeal (DE# 456, 3/8/12).

On October 30, 2012, Olem Shoe filed the instant motion for relief from judgment and for sanctions. See Olem Shoe Corp.'s Motion for Relief from Judgment and Motion for Sanctions Pursuant to Fed. R. Civ. P. 56(h) & the Court's Inherent Power (DE# 525, 10/30/12). Washington Shoe filed its response in opposition on November 30, 2012. See Washington Shoe's Response to Olem's Motion for Relief from Judgment and

Motion for Sanctions (DE# 532, 11/30/12).[3] Olem Shoe filed its reply on December 10,

2012. See Olem Shoe Corp.'s Reply Memorandum of Law in Support of Motion for

Relief from Judgment and Motion for Sanctions Pursuant to Fed. R. Civ. P. 56(h) & the

Court's Inherent Power (DE# 538, 12/10/12).

On December 12, 2012, the United States Court of Appeals for the Eleventh

Circuit stayed the appeal in this case pending this Court's disposition of the instant

motion. See Eleventh Circuit Order (DE# 559-1 at 3-4, 2/14/13). Pursuant to Rule 62.1

of the Federal Rules of Civil Procedure, the Court may defer consideration of the instant

motion, deny the instant motion or "state either that it would grant the motion if the court

of appeals remands for that purpose or that the motion raises a substantial issue." Fed.

R. Civ. P. 62.1(a). The parties agree that the Court should rule on the instant motion

rather than defer ruling. See Supplemental Memorandum of Law in Response to the

Court's Order of January 28, 2013 [D.E. 553] (DE# 559, 2/14/13); Defendant/Counter-

Plaintiff Washington Shoe's Response to Plaintiff/Counter-Defendant Olem's

Supplemental Memorandum of Law in Response to the Court's Order of January 28,

2013 [D.E. 553] (DE# 561, 2/25/13).

On July 8, 2013, Magistrate Judge O'Sullivan held a hearing on the instant

motion. See Hearing Transcript (DE# 569, 7/30/13).[4] At the hearing, Washington

---

[3] As part of its response, Washington Shoe filed Exhibit "G." See Washington
Shoe Co.'s Motion to File Under Seal (DE# 533, 11/30/12). Olem Shoe sought to strike
Exhibit "G" and Magistrate Judge O'Sullivan issued an Order finding that Exhibit "G"
should be considered by the Court in ruling on the instant motion. See Order (DE# 564,
7/1/13). The Court agrees.

[4] The transcript incorrectly states that the July 8, 2013 hearing took place on
February 22, 2013. See Hearing Transcript (DE# 569 at 1, 7/30/13).

Shoe's attorney stated that at the time the affidavit of Karl Moehring (DE# 250-3, 3/7/11) and the declaration of Robert M. Moehring (DE# 250-5, 3/7/11) were filed with Court, Washington Shoe and its attorney knew that the Zebra Supreme boots were sold exclusively at Target.com. Id. at 4-5. The affidavit and declaration also referred to the Ditsy Dots boots which were sold at both Target brick-and-mortar stores and Target.com. Id. at 5. Washington Shoe's attorney further stated that the attorneys drafted the affidavit and declaration for the review and signature of Messrs. Moehring. Id. Olem Shoe learned that the Zebra Supreme boots were sold exclusively at Target.com during the direct examination of Karl Moehring at trial, but did not immediately seek reconsideration of the summary judgment ruling because it did not realize it was an issue until it began "preparing the appellate briefing." Id. at 13-14.

## STANDARDS OF REVIEW

Olem Shoe cites to three grounds for relief in the instant motion: Rule 60 of the Federal Rules of Civil Procedure, the Court's inherent power and Rule 56(h) of the Federal Rules of Civil Procedure. See Olem Shoe Corp.'s Motion for Relief from Judgment and Motion for Sanctions Pursuant to Fed. R. Civ. P. 56(h) & the Court's Inherent Power (DE# 525, 10/30/12). The standard of review for each ground is discussed below.

**A.    Rule 60 of the Federal Rules of Civil Procedure**

Rule 60 of the Federal Rules of Civil Procedure states in pertinent part:

On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following

8

reasons:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> **(3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party**;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b)(1)-(6) (emphasis added). "To prevail on a 60(b)(3) motion, the movant must prove[ ] by clear and convincing evidence that an adverse party has obtained the verdict through fraud, misrepresentation, or other misconduct." Cox Nuclear Pharmacy, Inc. v. CTI, Inc., 478 F.3d 1303, 1314 (11th Cir. 2007) (alteration in original; citation and internal quotation marks omitted). "The moving party must also show that the conduct prevented the losing party from fully and fairly presenting his case or defense." Frederick v. Kirby Tankships, Inc., 205 F.3d 1277, 1287 (11th Cir. 2000) (citation omitted).

**B.     The Court's Inherent Power**

Olem Shoe also seeks relief under the Court's inherent power. The Court's inherent power is derived from the Court's need "to manage [its] own affairs so as to achieve the orderly and expeditious disposition of cases." Chambers v. NASCO, Inc.,

9

501 U.S. 32, 43 (1991) (internal citations and quotation marks omitted). "The key to

unlocking [the C]ourt's inherent power is a finding of bad faith." Barnes v. Dalton, 158

F.3d 1212, 1214 (11th Cir. 1998); see also Thomas v. Tenneco Packaging Co., 293

F.3d 1306, 1320 (11th Cir. 2002) (noting that "before a court can impose sanctions

against a lawyer under its inherent power, it must find that the lawyer's conduct

constituted or was tantamount to bad faith.") (citation and quotations marks omitted). "A

court should be cautious in exerting its inherent power and 'must comply with the

mandates of due process, both in determining that the requisite bad faith exists and in

assessing fees.'" Byrne v. Nezhat, 261 F.3d 1075, 1106 (11th Cir. 2001) (citing

Chambers, 501 U.S. at  50).

**C.    Rule 56(h) of the Federal Rules of Civil Procedure**

Rule 56(h) states as follows:

(h) Affidavit or Declaration Submitted in Bad Faith. If satisfied that an
affidavit or declaration under this rule is submitted in bad faith or solely for
delay, the court – after notice and a reasonable time to respond – may
order the submitting party to pay the other party the reasonable expenses,
including attorney's fees, it incurred as a result. An offending party or
attorney may also be held in contempt or subjected to other appropriate
sanctions.

Fed. R. Civ. P. 56(h). The advisory note to the 2010 amendment to Rule 56(h) states

that: "[s]anctions are made discretionary, not mandatory, reflecting the experience that

courts seldom invoke the independent Rule 56 authority to impose sanctions." Fed. R.

Civ. P. 56(h) 2010 advisory committee's note.

<u>ANALYSIS</u>

Olem Shoe seeks the following relief: (1) an Order vacating the Corrected Final

Judgment on a Jury Verdict (DE# 448, 2/1/12), the Order on Cross-Motion for Summary

Judgment (DE# 396, 10/30/12) and the Order on Supplemental Cross-Motions for

Summary Judgment (DE# 417, 1/5/12); (2) an Order dismissing with prejudice

Washington Shoe's copyright claims and (3) a judgment in favor of Olem Shoe and

against Washington Shoe. See Olem Shoe Corp.'s Motion for Relief from Judgment

and Motion for Sanctions Pursuant to Fed. R. Civ. P. 56(h) & the Court's Inherent

Power (DE# 525 at 1, 10/30/12). Olem Shoe argues that:

> At the very least, the claims of Olem Shoe's purported infringement of . . .
> Washington Shoe's . . . copyright in Zebra Supreme . . . and Rose Zebra
> Supreme . . . should be dismissed with prejudice, the judgment awarded
> to Washington Shoe reduced by the amount attributed to copyright
> infringement of Zebra Supreme ($6[,]334.34), and reasonable attorney's
> fees and costs awarded to Olem Shoe in connection with the Zebra
> Supreme & Rose Zebra Supreme claims of infringement.

Id. at 1-2. Olem Shoe also seeks sanctions under Fed. R. Civ. P. 56(h) in the form of

attorney's fees and costs and a finding of contempt against Washington Shoe. Id. at 2.

## A.    Rule 60(b)(3) Motion[5]

Olem Shoe seeks relief from the Court's Corrected Final Judgment on a Jury

Verdict (DE# 448, 2/1/12) pursuant to Rule 60(b)(3) of the Federal Rules of Civil

Procedure. See Olem Shoe Corp.'s Motion for Relief from Judgment and Motion for

Sanctions Pursuant to Fed. R. Civ. P. 56(h) & the Court's Inherent Power (DE# 525 at

---

[5] The Court questions the timeliness of Olem Shoe's Rule 60(b)(3) motion, filed almost nine months after the entry of the Corrected Final Judgment on a Jury Verdict (DE# 448, 2/1/12). In determining the timeliness of a Rule 60(b)(3) motion, "[t]he courts consider whether the party opposing the motion has been prejudiced by the delay in seeking relief and they consider whether the moving party had some good reason for his failure to take appropriate action sooner." Armstrong v. The Cadle Co., 239 F.R.D. 688, 692 (S.D. Fla. 2007) (quoting Lairsey v. Advance Abrasives Co., 542 F.2d 928, 930 (5th Cir. 1976)). It appears to the Court that the motion should have been brought before the appeal. However, Washington Shoe did not raise this argument and the Court will not consider the timeliness issue in this Order.

4, 10/30/12).

**1.     Olem Shoe Has Failed to Show by Clear and Convincing Evidence That Washington Shoe Obtained Summary Judgment on its Zebra Supreme Copyright Claims Through Fraud, Misrepresentation, or Other Misconduct**

Olem Shoe argues that Washington Shoe engaged in fraud and misrepresentation when it filed the Affidavit of Karl Moehring (DE# 250-3, 3/7/11) and the Declaration of Robert M. Moehring (DE# 250-5 at 16-19, 3/7/11) in support of Washington Shoe's summary judgment motion. Olem Shoe argues that the statement in both the affidavit and the declaration that "The Ditsy Dots and Zebra Supreme boots have been a huge commercial success, selling at national retailers such as Target® stores"[6] was false because the Zebra Supreme boots were sold exclusively through Target.com and not at Target brick-and-mortar stores. See Olem Shoe Corp.'s Motion for Relief from Judgment and Motion for Sanctions Pursuant to Fed. R. Civ. P. 56(h) & the Court's Inherent Power (DE# 525 at 8, 10/30/12) (stating that "Washington Shoe presented blatantly false testimony that Zebra Supreme was available in Target stores.").

Olem Shoe further argues that "Washington Shoe's declarations were . . . false with respect to the length of time that Zebra Supreme had been on the market." Olem Shoe Corp.'s Motion for Relief from Judgment and Motion for Sanctions Pursuant to Fed. R. Civ. P. 56(h) & the Court's Inherent Power (DE# 525 at 8, 10/30/12). The Affidavit of Karl Moehring states that: "The Zebra Supreme boots have been available

---

[6] See Affidavit of Karl Moehring (DE# 250-3 at ¶1, 3/7/11) and the Declaration of Robert M. Moehring (DE# 250-5 at 17-18, 3/7/11).

across the country **by Target® for years**." Affidavit of Karl Moehring (DE# 250-3 at ¶2, 3/7/11) (emphasis added). The Declaration of Robert M. Moehring states that: "The Zebra Supreme boots have been available across the country **in Target® stores for years**." Declaration of Robert M. Moehring (DE# 250-5 at 17-18, 3/7/11) (emphasis added).

### a.   The "For Years" Statement

Olem Shoe argues that the "for years" statement was false because the first date of sale for the Zebra Supreme boots was September 28, 2009. The Declaration of Robert M. Moehring (DE# 250-5 at 17-18, 3/7/11) was dated March 11, 2010, approximately five months after the September 28, 2009 date, and the Affidavit of Karl Moehring (DE# 250-3 at ¶1, 3/7/11) was dated March 7, 2011, approximately one year and five months after the September 28, 2009 date.

Olem Shoe relies on the trial testimony of Karl Moehring where he testified that the first sale date of the "Zebra pattern" was September 28, 2009.  See Trial Transcript (DE# 512 at 204, 4/19/12). According to Olem Shoe:

> While both Karl and Robert Moehring testified that the Zebra Supreme had been available at Target stores "for years" (see D.E. 250-3, at ¶2; D.E. 250-5, at ¶5), Karl Moehring's trial testimony revealed that to be an utter falsehood as well. In fact, the first sale of Zebra Supreme boots to target.com had only taken in place in late September, 2009, less than six (6) months prior to Washington Shoe's submitting Robert Moehring's declaration in mid-March, 2010.

Olem Shoe Corp.'s Motion for Relief from Judgment and Motion for Sanctions Pursuant to Fed. R. Civ. P. 56(h) & the Court's Inherent Power (DE# 525 at 8, 10/30/12).

A fair reading of the exchange between Olem Shoe's counsel and Karl Moehring at trial indicates that the witness testified to the September 28, 2009 date based on the

information contained in the document WSC 0088:

> Q. Let's talk about the Zebra pattern for a second. Okay. You'll agree with me that Washington Shoe began to sell the Zebra pattern, the one that was sold to target.com, beginning September 28th, 2009; is that correct?
>
> A. Do you know which one that's numbered?
>
> Q. It's not there. I'm just asking you a question.
>
> **A. I would have to reference. I don't know exactly.**
>
> **Q. Let me show you a document that was produced in discovery by your company as WSC 0088.**
>
> **A. And you wanted the first sale?**
>
> **Q. Yes.**
>
> **A. September 28th, 2009.**

See Trial Transcript (DE# 512 at 204, 4/19/12) (emphasis added). Of note, the

September 28, 2009 date is the earliest date on the WSC 0088 document. See Exhibit

"A," WSC 0088 (DE# 533-1 at 2, 11/30/12). Olem Shoe's counsel showed WSC 0088

to the witness after the witness responded to the question about the first sale date of

the "Zebra pattern" as follows: "I would have to reference [sic]. I don't know exactly."

Trial Transcript (DE# 512 at 204, 4/19/12).

Unlike the Target "stores" statements, discussed infra, which Olem Shoe

arguably would not have been able to discover until trial, the alleged falsehood in the

"for years" statement was something that was known or should have been known to

Olem Shoe prior to the summary judgment ruling. The WSC 0088 document was

produced to Olem Shoe during discovery,[7] thus Olem Shoe had ample opportunity to bring to the Court's attention the perceived discrepancy in the "for years" claim in the affidavit and declaration before the Court's summary judgment ruling, issued over eight months after the Affidavit of Karl Moehring (DE# 250-3 at ¶1, 3/7/11) and the Declaration of Robert M. Moehring (DE# 250-5 at 17-18, 3/7/11) were filed with the Court. There is no reason why Olem Shoe could not have pointed out these alleged discrepancies between the "for years" statement in the affidavit and declaration and the evidence produced during discovery to the Court at the summary judgment stage. Thus, with respect to the "for years" statement in the affidavit and in the declaration, Olem Shoe was not deprived of the opportunity to present its defense that Olem Shoe's sales began before Washington Shoe sold its Zebra Supreme boots. See Frederick, 205 F.3d at 1287 (stating that "[t]he moving party must also show that the conduct prevented the losing party from fully and fairly presenting his case or defense.").

Additionally, Washington Shoe has presented evidence suggesting that the first date of sale may have been before September 28, 2009. In response to Olem Shoe's accusation of making an "utter falsehood" with respect to the "for years" statement in the affidavit and in the declaration, Washington Shoe filed Exhibit "G."[8] Exhibit "G" is a facsimile of purchase orders from Target dated August of 2008. Exhibit "G" (DE# 533-2 at 11, 21, 11/30/12). Washington Shoe submitted Exhibit "G" in order to refute Olem

---

[7] At trial, Olem Shoe's counsel stated: "Let me show you a document that was **produced in discovery** by your company as WSC 0088." Trial Transcript (DE# 512 at 204, 4/19/12) (emphasis added).

[8] Exhibit "G" was filed by Washington Shoe under seal with the Court on November 30, 2012. See Washington Shoe Co.'s Motion to File Under Seal (DE# 533, 11/30/12).

Shoe's argument that there were no sales of Zebra Supreme boots prior to September 2009. See Washington Shoe's Response to Olem's Motion for Relief from Judgment and Motion for Sanctions (DE# 532 at 10, 11/30/12). Referring to Exhibit "G," Washington Shoe points out in its response to Olem Shoe's motion for relief from judgment that "[a]mong the products on the purchase orders are Zebra Supreme design boots." Id.; Exhibit "G" (DE# 533-2 at 11, 21, 11/30/12). Thus, Exhibit "G" suggests that there were sales of the Zebra Supreme boots in 2008 and supports the "for years" statement in the affidavit and in the declaration.

Olem Shoe correctly points out that Exhibit "G" is a purchase order containing a "Cancel Date" and does not prove that the Zebra Supreme boots were in fact sold in August 2008. See Olem Shoe Corp.'s Motion to Strike Washington Shoe's Exhibit "G" to Response to Olem's Motion for Relief from Judgment and Motion for Sanctions, or in the Alternative, Objection to Court's Consideration Thereof, and Motion for Sanctions under Fed. R. Civ. P. 37 (DE# 542 at 3 n.2, 12/28/12). While Exhibit "G" is not conclusive evidence of the first date of sale for the Zebra Supreme boots, it is indicative of a sale date prior to the September 28, 2009 date testified to at trial. The Court finds that in light of Exhibit "G," Olem Shoe has not shown that the "for years" statement in the affidavit and declarations was false.

### b.    The "Target®" and "Target® Stores" Statements

The Court will next address the statement concerning the availability of the Zebra Supreme boots at "Target®" or "Target® stores" in the affidavit and in the declaration. As noted above, paragraph 1 of Karl Moehring's affidavit states that: "The Ditsy Dots and Zebra Supreme boots have been a huge commercial success, selling at national

retailers such as **Target**® **stores**." <u>See</u> Affidavit of Karl Moehring (DE# 250-3 at ¶1, 3/7/11) (emphasis added). Robert M. Moehring's declaration contains an identical statement at paragraph 4. <u>See</u> Declaration of Robert M. Moehring (DE# 250-5 at ¶4, 3/7/11). Paragraph 2 of Karl Moehring's affidavit states, in part, that: "The Zebra Supreme boots have been available across the country **by Target**® **for years**." <u>Id.</u> at ¶2 (emphasis added). Robert M. Moehring's declaration contains a similar, but not identical statement: "The Zebra Supreme boots have been available across the country **in Target**® **stores for years**." <u>See</u> Declaration of Robert M. Moehring (DE# 250-5 at ¶5, 3/7/11) (emphasis added).

Olem Shoe argues that "Washington Shoe presented blatantly false testimony that Zebra Supreme was available in Target stores." Olem Shoe Corp.'s Motion for Relief from Judgment and Motion for Sanctions Pursuant to Fed. R. Civ. P. 56(h) & the Court's Inherent Power (DE# 525 at 8, 10/30/12). Washington Shoe maintains that the statement is not false because "there is no distinction in the declaration as to whether the referenced stores are online or brick and mortar." Washington Shoe's Response to Olem's Motion for Relief from Judgment and Motion for Sanctions (DE# 532 at 6, 11/30/12). Washington Shoe further argues that:

> There is sufficient ambiguity in the word as used in the declarations that the trial testimony is not necessarily contradictory. True, the trial testimony uses the word "stores" in the brick and mortar sense, but the trial testimony also directly distinguishes the store from Target.com, the online store. Such a distinction is not made in the declaration and there is nothing to lead to the conclusion that the word "stores" is being used consistently in both the testimony and the declarations, particularly when two different people are involved.

<u>Id.</u>

17

In his Report and Recommendation, Magistrate Judge O'Sullivan stated the following: "It is clear that the Court believed that the reference to 'Target stores' was a reference to brick-and-mortar stores." Report and Recommendation (DE# 570 at 19, 8/5/13). Magistrate Judge O'Sullivan then determined that:

> In drafting the affidavit and the declaration, Washington Shoe carelessly lumped together the Ditsy Dots and Zebra Supreme boots and failed to distinguish between online sales and brick-and-mortar sales. As a result, the Court was left with the reasonable impression that both boots were sold at Target brick-and-mortar stores. This is particularly true when the statements in the affidavit and declaration are coupled together with the Google maps screenshot showing over 100 Target brick-and mortar stores in Florida.[9] However, the undersigned finds no evidence of a deliberate scheme by Washington Shoe to intentionally create this misrepresentation. While the reference to Target "stores" in the declaration and affidavit were drafted in such a careless manner as to create the misrepresentation at issue, the undersigned does not find that Washington Shoe engaged in a conscious scheme to mislead the Court.

Id. at 19-20 (footnote in original). While the Court agrees with Magistrate Judge O'Sullivan's recitation of the facts, as discussed below, it disagrees with his characterization that Washington Shoe's affidavits created a misrepresentation.

It is the Court's view that it was not intentionally mislead by Washington Shoe or its attorneys. Nonetheless, even if the Court were to find fraud, misrepresentation or other misconduct, the appropriate remedy would not be to dismiss Washington Shoe's claims with prejudice and enter a judgment in favor of Olem Shoe, but to reopen the summary judgment proceedings to determine whether the outcome would remain the same. As discussed in detail below, the Court finds that Washington Shoe would still be

---

[9] The inclusion of the Google maps screenshot was relevant to the issue of access as it pertained to the Ditsy Dots design because the Ditsy Dots boots, unlike the Zebra Supreme boots, were sold at Target brick-and-mortar stores.

entitled to summary judgment.

> **2.     The So-Called Misrepresentation Did Not Prevent Olem Shoe from Fully Presenting its Defenses in this Case**

Rule 60(b)(3) requires the movant to: (1) prove by clear and convincing evidence that the adverse party obtained the verdict through fraud, misrepresentations, or other misconduct and (2) demonstrate that the conduct prevented the movant from fully presenting its case or defense. See Waddell v. Hendry Cnty Sheriff's Office, 329 F.3d 1300, 1309 (11th Cir. 2003). As discussed in detail below, the Court has reviewed its Order on Cross-Motion for Summary Judgment (DE# 396 at 24, 10/30/12) and finds that the so-called misrepresentation did not prevent Olem Shoe from fully presenting its defenses to Washington Shoe's copyright infringement claim on the Zebra Supreme boots.

To prevail on a copyright infringement claim, the claimant must show: "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1247-48 (11th Cir. 1999) (quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991)). "If the plaintiff does not have direct proof of copying, the plaintiff may show copying by demonstrating that the defendants had access to the copyrighted work and that the works are 'substantially similar.'" Id. at 1248 (citing Benson v. Coca-Cola Co., 795 F.2d 973, 974 (11th Cir. 1986), reh'g denied, 801 F.2d 404 (11th Cir.1986) (en banc)). "Where a plaintiff cannot demonstrate access he may, nonetheless, establish copying by demonstrating that his original work and the putative infringing work are strikingly similar." Calhoun v. Lillenas Publ'g, 298 F.3d 1228, 1232 n.6 (11th Cir. 2002) (per

curiam) (citations omitted).

In ruling on the cross-motions for summary judgment, the Court found that Washington Shoe had not set forth direct evidence of copying. See Order on Cross-Motion for Summary Judgment (DE# 396 at 24, 10/30/12). Nonetheless, it found as a matter of law that "Olem Shoe had 'access' to Washington Shoe's designs" and that "Washington Shoe ha[d] met its burden to show, as a matter of law, that the two [Zebra] designs [we]re substantially similar . . . ." Id. at 26, 30.[10] As indicated below, the so-called misrepresentation regarding Target "stores" does not affect the Court's determination that Olem Shoe had access to the Zebra Supreme boots.

In the summary judgment Order, the Court noted that "[a]ccess [was] defined as 'a reasonable opportunity' to view the work in question." Order on Cross-Motion for Summary Judgment (DE# 396 at 24, 10/30/12). The Court found that Olem Shoe had access to both the Ditsy Dots and the Zebra Supreme designs. The Court summarized the evidence of access as follows:

> Washington Shoe offers the testimony of its president and owner that Ditsy Dots boots "were first sold in 2007 and displayed at major trade shows including the World Shoe + Accessories Show . . . held in Las Vegas." Decl. of R. Moehring, D.E. # 250-5 at ¶ 5. In addition, Moehring testifies that "Ditsy Dots and Zebra Supreme have been a huge commercial success, selling at national retailers such as Target stores" and Zebra Supreme boots have been available in Target stores "for years." Id. Washington Shoe's Statement of Undisputed Material Facts

---

[10] The Court also found that the Ditsy Dots design was substantially similar to Olem Shoe's design. See Order on Cross-Motion for Summary Judgment (DE# 396 at 28-29, 10/30/12). In his Report and Recommendation, Magistrate Judge O'Sullivan found that "[b]ecause the Ditsy Dots boots were sold at Target brick-and-mortar stores, there was no misrepresentation in the affidavit and declaration as to the Ditsy Dots boots and the Court's finding of access to the Ditsy Dots design should not be disturbed." Report and Recommendation (DE# 570 at 21 n.9, 8/5/13).

(D.E. #250-2) includes a screenshot from Google maps showing over one hundred Target locations in Florida. Washington Shoe also points to the record statements of Olem Shoe's Operations General Manager, Julio Acosta, see Decl. of Julio Acosta, D.E. # 59. Acosta testifies that as an Olem Shoe representative he attended the above-referenced Las Vegas trade show in February and August of 2007 and in subsequent years but that the Olem Shoe booth and Washington Shoe booth were in different hotels "several miles away." D.E. # 59 at ¶ 23. He also testifies that he did not know of Washington Shoe's existence in 2007 or in subsequent years prior to this dispute. Finally, he testifies that no one in the company knew about Washington Shoe's Target sales.

Id. at 25. The Court determined that access could be inferred from wide dissemination.

Id. at 26.  The Court then concluded that:

> **Given that Ditsy Dots and Zebra Supreme boots were sold nationwide at stores such as Target** and could have been viewed at trade shows that both companies attended, Washington Shoe has shown that Olem Shoe employees had a reasonable opportunity to view the boots, whether or not they actually viewed them. **Such evidence of wide dissemination is significant, affirmative and probative evidence and represents a reasonable, and not just a bare, possibility that the work was observed.**

Id. (emphasis added). In the instant case, the statements in Karl Moehring's affidavit and Robert M. Moehring's declaration coupled with the Google map exhibit, led the Court to reasonably assume that the Zebra Supreme boots were sold at Target brick-and-mortar stores and that the boots were widely disseminated. That assumption was wrong. Nevertheless, it is noteworthy that the Court's access determination would be the same if access was by virtue of brick-and-mortar stores, Target.com or tradeshows.

Although the Zebra Supreme boot was not available at Target brick-and-mortar stores, it is clear to the Court and it so finds that there was access through wide dissemination based on the availability of the Zebra Supreme boot at Target.com. The case cited by Olem Shoe in support of its argument that the Target website does not

establish access, Art Attacks Ink, LLC v. MGA Entertainment, Inc., 581 F.3d 1138 (9th Cir. 2009),[11] is readily distinguishable from the instant case because, unlike at the time in question, the qualities and capabilities of the website in that case were severely limited. The Ninth Circuit described the website in Art Attacks as follows:

> Although we recognize the power of the internet to reach a wide and diverse audience, the evidence here is not sufficient to demonstrate wide dissemination. Art Attacks launched its website in 1996, during the early years of common internet use. The image-heavy website took two full minutes to fully load. Even then, the Spoiled Brats design was only one of several images on the page. Viewers would not see the Spoiled Brats design without scrolling down on the page. Furthermore, the webpage did not include "meta tags" that would identify the Art Attacks site to internet search engines. As a result, a potential viewer who typed "Spoiled Brats" into a search field would likely not encounter the Art Attacks page. A website with such limitations could not have widely disseminated the copyrighted Spoiled Brats material.

Art Attacks Ink, LLC, 581 F.3d at 1145. The Court notes that the internet has come a long way since 1996 and that consumers widely use the internet to search for and purchase products. In fact, at the time in question, the internet was generally viewed as a common, effective and convenient means of promoting products. Thus, a good argument can be made that because of the internet's wide use at the time in question, it is even more likely, not less likely, that Olem Shoe saw the Zebra Supreme boots on the Target.com website, as opposed to brick-and-mortar stores. Thus, the Zebra Supreme boots' online presence on the Target.com website supports the finding of access.

In addition to the Court's finding that there was access through wide

---

[11] See Olem Shoe Corp.'s Motion for Relief from Judgment and Motion for Sanctions Pursuant to Fed. R. Civ. P. 56(h) & the Court's Inherent Power (DE# 525 at 8, 10/30/12).

dissemination in the instant case, the Court also finds that summary judgment on the Zebra Supreme claims would have been appropriate for another reason. As noted above, if a claimant cannot show access, it may still be able to prevail on its copyright infringement claim if it can show that the two works are "strikingly similar." Calhoun, 298 F.3d at 1232 n.6 ("[w]here a plaintiff cannot demonstrate access he may, nonetheless, establish copying by demonstrating that his original work and the putative infringing work are strikingly similar.").

At the summary judgment stage, Washington Shoe also argued that its boots and Olem Shoe's boots were strikingly similar. See Order on Cross-Motion for Summary Judgment (DE# 396 at 27 n.23, 10/30/12) (noting that "Washington Shoe urges the Court to find striking similarity, which requires a higher burden of proof than substantial similarity."). The Court stated that:

> While this Court believes that **the patterned designs on the face of the boots are indeed strikingly similar**, we need not reach this conclusion as a matter of law. Where access is established as a matter of law, as we find herein, a claimant need only prove the more lenient standard of substantial similarity.

Id. (emphasis added). In a footnote in a later part of the summary judgment Order discussing Washington Shoe's trade dress infringement claim against Olem Shoe, the Court stated that "striking similarity" was a question of fact that required expert testimony:

> While this Court is competent to find substantial similarity as a matter of law by comparing the patterned designs of the two boots from the perspective of an average lay observer, we are not competent to find exact copying nor "striking similarity," which are questions of fact requiring expert testimony. See, e.g., Testa v. Janssen, 492 F. Supp. 198, 203 (W.D. Penn. 1980) ("Expert testimony is not required to establish 'substantial similarity.' However, when a plaintiff seeks to . . . establish

23

that two works are 'strikingly similar,' such testimony is required.").

Id. at 33 n.27.

In granting summary judgment on Washington Shoe's copyright claims, the Court determined that Olem Shoe had access to the Zebra Supreme boots and that the Zebra Supreme boots and Olem Shoe's zebra pattern boots were substantially similar. Therefore, the Court did not need to reach the issue of whether the two boots were strikingly similar and the finding of striking similarity was not essential to the Court's prior ruling on summary judgment. However, on further review and upon closer look at the applicable law and at the boots themselves, the Court was correct in its observation that the Zebra Supreme boots and Olem Shoe's zebra pattern boots were strikingly similar, but incorrect that the Court was not competent to find striking similarity in the absence of reliable expert testimony.

In the summary judgment Order, the Court relied on Testa v. Janssen, 492 F.Supp. 198, 203 (W.D. Penn. 1980) to support its conclusion that expert testimony was needed to find "striking similarity." See  Order on Cross-Motion for Summary Judgment (DE# 396 at 33 n.27, 10/30/12). Testa required the court to compare two songs. The court quoted extensively from Sherman, Musical Copyright Infringement: The Requirement of Substantial Similarity, 22 ASCAP Copyright L.Symp. 81 (1977) which stated that "something less than note-for-note identity . . . will permit plaintiff to dispense with direct proof of access" and that "[o]f particular significance is the existence of common errors in the two works and unusual departures from normal metric structure." Id. at 203. Clearly, the identification of "common errors in the two works and unusual departures from normal metric structure" is something that is

24

beyond the purview of the average jurist and the Court would require the assistance of expert testimony were it required to find striking similarity between two musical works.

Washington Shoe cites other cases where the courts have not required expert testimony on the issue of striking similarity. See Jenkins v. Jury, No. 5:07-cv-133-Oc-GRJ, 2009 WL 1043965, at *4 (M.D. Fla. Apr. 16, 2009) (in a case involving metal fish scuplures, the court "compared closely the [sculptures] and ha[d] no difficulty finding that they [we]re 'strikingly similar'" without the aid of expert testimony); Apple Corps. Ltd. v. Button Master, P.C.P., Inc., No. CIV. A. 96-5470, 1998 WL 126935, at*12 (E.D. Pa. Mar. 19, 1998) (without expert testimony the court engaged in a visual comparison of images and found that "the similarities in facial characteristics, expressions, hair, and clothing [we]re so striking that 'the possibilities of independent creation, coincidence and prior common source are, as a practical matter, precluded.'"); Kent v. Revere, No. 84-798-CIV-ORL-18, 1991 WL 71113 at *7 (M.D. Fla. Oct. 28, 1985) (in a case involving copyrighted house plans and drawings, the court rejected the need for expert testimony stating that "such testimony [was] unnecessary in this case because this [wa]s not a 'technical' field in which the trier of fact is not able or equipped to make this determination.").

The cases cited by Washington Shoe require only visual comparisons, as opposed to the comparison of technical musical compositions. The Court finds those cases more analogous to the comparison analysis required in the instant case in reaching the issue of striking similarity. Having determined that expert testimony is not required to reach the issue of striking similarity in the instant case, the Court persists in its prior finding that the Zebra Supreme boots and Olem Shoe's zebra pattern boots are

strikingly similar as a matter of law. See Order on Cross-Motion for Summary Judgment (DE# 396 at 27 n.23, 10/30/12) (stating that "this Court believes that the pattern designs on the face of the boots are indeed strikingly similar. . . ."). The subject boots are shown below:

 

See Exhibits 4 and 16, Notice of Filing Undisputed Photographs (DE# 354, 7/22/11). In the Order on Cross-Motion for Summary Judgment (DE# 396 at 24, 10/30/12), the Court compared the Zebra Supreme boots with Olem Shoe's zebra pattern boots. The Court observed that:

> Such comparisons, from any angle, . . . reveal distinct patterns common to both company's boot designs. From the toe pointing right view, both show a black triangular shape at the top of the boot resembling an arrowhead pointing left. Moving vertically down the boot below the arrowhead, both show a series of alternating black and white wavy lines of different thicknesses. Continuing to move down vertically, this series of lines leads into a wavy elliptical shape in the center of the boot. Immediately below, there is another series of alternating black and white wavy lines of different thicknesses. Immediately below these lines is a black diamond-shaped object enclosing another ellipse. Immediately below the diamond shape, a final series of wavy lines follow vertically down until reaching the toe of the boot. While the white space is replaced with gold and the number of lines is slightly different in some of the photographs, the distinguishing characteristics of the pattern such as the arrowhead,

diamond and ellipse are distinct and common to each from the front and toe pointing right views. From the other three views, other distinct patterns are also common to both designs while no distinct patterns appear in one but not the other. Olem Shoe's expert, Goldaper, identifies the following as differences in the two patterns: "thicker stripes" in the Olem Shoe pattern, a "different arrangement of stripes" in the Olem Shoe pattern and stripes "missing entirely" from the Olem Shoe pattern. D.E. 252-1 at ¶ 12. Nonetheless, she does not specifically identify where the stripes are thicker, what arrangements are different nor which stripes are missing. To the extent any such differences exist, they do not appear to be differences in the pattern, but merely differences caused by the manufacturing process based on the size of the boot or where the pattern begins. She also identifies the use of a solid black overlay strap on the Olem Shoe boot where Washington Shoe uses a zebra pattern and different buckles. D.E. 252-1 at ¶ 12. As discussed earlier, such differences in color or utilitarian function do not bear on the protected design.

Id. at 29-30. In the summary judgment Order, the Court found that these features supported a finding of substantial similarity between the two boots. As noted above, at the time the Court did not need to reach the issue of striking similarity and was under the mistaken belief that expert testimony would be needed to make such a finding. Nonetheless, the Court did state that the boots were strikingly similar. Id. at. 27 n.23. Having reconsidered its position on the necessity of expert testimony, the Court persists in its finding that the boots are strikingly similar. Because the two boots are virtually identical, the commonalities that supported a finding of substantial similarity also support a finding of striking similarity. See e.g., Kent, 1991 WL 71113 at *7 (finding that house plans met the standard for striking similarity even though some adjustments were made to accommodate client preferences where "the general layout, spacial relationships, and configurations in the two plans [were] essentially identical[ ]" and "also many smaller details such as the placement of door, closets, windows, and appliances [we]re the same").

After reviewing the above and considering the subject boots, the Court finds that this is a case of striking similarity which also gives rise to the inference of factual copying. See Peter Letterese and Assoc., Inc. v. World Inst. of Scientology Enter., Int'l, 533 F.3d 1287, 1300-01 (11th Cir. 2008) (stating that "[i]n the absence of direct proof, factual copying may be inferred from circumstantial evidence, either through establishing that the works are strikingly similar . . . or through proof of access to the copyrighted work and probative similarity.") (citations and internal quotation marks omitted).

The Court determines that the record supports both a finding of wide dissemination and a finding of striking similarity. Consequently, the Order on Cross-Motion for Summary Judgment (DE# 396, 10/30/12) should not and will not be disturbed. The Court reaches this conclusion because under Rule 60(b)(3), Olem Shoe must demonstrate that Washington Shoe's conduct prevented it from fully presenting its defenses, Waddell, 329 F.3d at 1309, and Olem Shoe has failed to do so. A finding of access is still supported by the availability of the Zebra Supreme boots at Target.com. Alternatively, a finding of access is unnecessary because the Zebra Supreme boots and Olem Shoe's zebra pattern boots are strikingly similar. See Calhoun, 298 F.3d at 1232 n.6 ("[w]here a plaintiff cannot demonstrate access he may, nonetheless, establish copying by demonstrating that his original work and the putative infringing work are strikingly similar."). In either case, Washington Shoe's so-called misrepresentation did not preclude Olem Shoe from fully presenting its defenses to Washington Shoe's copyright infringement claim as to the Zebra Supreme design. In summary, the Court finds that the Zebra Supreme boots were widely disseminated and

28

therefore accessible and were strikingly similar to Olem Shoe's zebra pattern boots. Accordingly, Olem Shoe's request for Rule 60(b)(3) relief is **DENIED**.

**B.    The Court's Inherent Power**

Olem Shoe also seeks relief under the Court's inherent power. Olem Shoe argues that "the entirety of Washington Shoe's copyright infringement claims – including that for Ditsy Dots – should be dismissed with prejudice and judgment entered in favor of Olem Shoe." Olem Shoe Corp.'s Motion for Relief from Judgment and Motion for Sanctions Pursuant to Fed. R. Civ. P. 56(h) & the Court's Inherent Power (DE# 525 at 11, 10/30/12). Olem Shoe states that this is "the only adequate sanction for Washington Shoe's unrepentant bad faith, and is amply justified by the evidence supporting its intentional fraud." Id. The Court disagrees.

Olem Shoe acknowledges that "[i]n order to demonstrate fraud upon the Court, Olem Shoe **must demonstrate, by clear and convincing evidence, that Washington Shoe has sentiently set in motion an unconscionable scheme calculated to interfere with the Court's ability to adjudicate this matter** by improperly influencing the trier of fact or unfairly hampering the presentation of Olem Shoe's defense." Id. at 11-12 (emphasis added). "The District Court's inherent power should be exercised with caution and its invocation requires a finding of bad faith." Kornhauser v. Comm'r of Social Sec., 685 F.3d 1254, 1257 (11th Cir. 2012); see also Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998) ("The key to unlocking [the] court's inherent power is a finding of bad faith."). "A finding of bad faith is warranted where an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent. A party also demonstrates bad faith by delaying or disrupting

29

the litigation or hampering enforcement of a court order." Barnes, 158 F.3d at 1214 (internal quotation omitted). The Court finds that the conduct in the instant action, while less than stellar and meticulous, falls short of the bad faith required to impose sanctions under the Court's inherent powers. While the Court finds that the affidavit and declaration coupled with the Google maps screenshot created an implication that the Zebra Supreme boots were sold at Target brick-and-mortar stores, it finds no intentional wrongdoing or bad faith on the part of Washington Shoe or its attorneys. Accordingly, the Court will not exercise its inherent powers to grant the relief requested by Olem Shoe.

**C.    Rule 56(h)**

Finally, Olem Shoe seeks sanctions pursuant to Rule 56(h) of the Federal Rules of Civil Procedure. Rule 56(h) of the Federal Rules of Civil Procedure states that the Court "may" impose sanctions "[i]f satisfied that an affidavit or declaration under [Rule 56] is submitted in bad faith or solely for delay." Fed. R. Civ. P. 56(h). The advisory note to the 2010 amendment to Rule 56(h) states that: "[s]anctions are made discretionary, not mandatory, reflecting the experience that courts seldom invoke the independent Rule 56 authority to impose sanctions." Fed. R. Civ. P. 56(h) 2010 advisory committee's note. For the reasons discussed above, the Court declines to impose sanctions under Rule 56(h). Olem Shoe has not shown that the declaration of Robert M. Moehring or the affidavit Karl Moehring were submitted in bad faith. While the Court finds that the affidavit and declaration suggests a misleading implication with respect to the availability of Zebra Supreme boots at Target brick-and-mortar stores, see discussion supra, "[b]ad faith in the context of Rule 56(h) requires a deliberate or knowing act for

an improper purpose." <u>Raher v. Fed. Bureau of Prisons</u>, No. 03:09-cv-00526-ST, 2011 WL 4832574, *8 (D. Or. Oct. 12, 2011) (citing <u>Thoroughman v. Savittieri</u>, 323 F. App'x 548 (9th Cir. 2009)). The court in <u>Raher</u> observed that "[a]ffidavit testimony that is materially contradicted by prior deposition testimony alone is not sufficient to show the necessary bad faith under Rule 56(h)." Olem Shoe has not shown that Washington Shoe and/or its counsel exhibited the kind of bad faith conduct that would warrant sanctions under Rule 56(h). Accordingly, the Court will not impose sanctions under Rule 56(h).

Finally, the Court declines Olem Shoe's invitation to revisit the ownership of the Ditsy Dots design since the issue was thoroughly litigated by the parties and decided on summary judgment. <u>See</u> Order on Cross-Motion for Summary Judgment (DE# 396 at 22-23, 10/30/12) (discussing in detail the ownership of the Ditsy Dots design).

## CONCLUSION

In accordance with the foregoing, the Court finds no misrepresentation, deliberate or otherwise, or fraud on the Court. For the reasons discussed above there is no reason for setting aside the Order on Cross-Motions for Summary Judgment (DE# 396, 12/1/11) or granting the other relief sought by Olem Shoe. Accordingly, it is

ORDERED AND ADJUDGED that Olem Shoe Corp.'s Motion for Relief from Judgment and Motion for Sanctions Pursuant to Fed. R. Civ. P. 56(h) & the Court's Inherent Power (DE# 525, 10/30/12) is **DENIED**. It is further

ORDERED AND ADJUDGED that the Plaintiff Olem Shoe Corporation's Objections to the Report and Recommendation [D.E. 570] (DE# 572, 8/19/13) are **OVERRULED** and the Report and Recommendation (DE# 570, 8/5/13) is hereby

**ADOPTED** to the extent that it is consistent with this Order.

DONE AND ORDERED in Chambers at Miami, Florida this 16th day of

September, 2013.

_____
PAUL C. HUCK
UNITED STATES DISTRICT JUDGE

Copies furnished to:
All Counsel of Record